STATE EX REL. NORTHERN TRANSPORTATION COMPANY, Appellant, vs. RAILROAD COMMISSION OF WISCONSIN and others, Respondents.

*May 12—June 18, 1928.*

For the appellant there was a brief by *Kittell, Jaseph, Young & Everson,* attorneys, and *Lynn D. Jaseph,* of counsel, all of Green Bay, and oral argument by *Lynn D. Jaseph.*

For the respondents Levitan, state treasurer, and the Railroad Commission there was a brief by the *Attorney General* and *Suel O. Arnold,* assistant attorney general, and oral argument by *Mr. Arnold.*

For the respondent Wisconsin Motor Coach Association there was a brief by *Olin & Butler,* attorneys, and *R. M. Rieser,* of counsel, all of Madison, and oral argument by *Mr. Rieser.*

STEVENS, J. The relator concedes that the provisions of the law conferring power on the Railroad Commission to regulate common carriers by motor vehicles are valid. The only portions of the statute which are attacked are those which provide for the ton-mile tax.

■ Streets and highways belong to the public and are constructed for the use of the public. But their use for the purpose of conducting a business for gain is a special and extraordinary use which may be permitted only upon such conditions as the legislature may prescribe. *Packard v. Banton,* 264 U. S. 140, 144, 68 Lawy. Ed. 596, 608, 44 Sup. Ct. 257. "Common carriers for hire, who make the high-

ways their place of business, may properly be charged an extra tax for such use." *Clark v. Poor,* 274 U. S. 554, 557, 71 Lawy. Ed. 1199, 1201, 47 Sup. Ct. 702.

■ Relator does not question the power of the state to impose a reasonable tax for its use of the public highways, but it insists that the amount of the tax imposed by this law is so unreasonable in amount as to deny it equal protection of the laws and to take its property without just compensation. Conceding the power to levy the tax, the question of the amount of the tax is one primarily for the legislature. The court cannot interfere with the action of the legislature unless it clearly appears that the amount fixed is so flagrantly unreasonable, unjust, and oppressive that the courts can find that it destroys or unreasonably hampers a legitimate business or occupation.

A consideration of the facts established on the trial leads to the conclusion that the relator has not met the burden imposed upon it. Most of the mileage of the highways over which relator operates its trucks is paved with concrete. It has cost in excess of $5,300,000 to construct the highways used by relator. Basing an annual depreciation charge on the assumption that these highways will have a useful life of twenty-five years, and adding thereto the maintenance cost, we have an annual charge in excess of $280,000 against the highways on which relator operates its trucks. The tax paid by relator each year for the use of all these highways would construct less than one-half mile of concrete paved highway such as the state supplies to the relator, over which to conduct its business for gain.

The tax imposed on relator's large trucks amounts to 6 2-5c for each mile traveled. On its smaller trucks the tax amounts to 4 2-5c a mile. This cannot be said to constitute an excessive charge for the facilities supplied to the relator. The proof shows that it cost interurbans, with whom the relator competes, 7-10c per ton mile to maintain ways and

structures which correspond to the highways supplied by the state over which relator conducts its business. The actual cost per ton mile for the ways and structures over which the interurban operates its cars is approximately twice what the state charges the relator for supplying the ways and structures over which it conducts its business.

Relator bases its case largely upon a comparison of the number of its trucks with the total number of vehicles passing over these highways. This is not a fair basis of attack, because the roads are built for the use of the public generally, who do not use the highways for the purpose of conducting a business for profit. Again, the average motor vehicle is much lighter in weight. It is the heavy truck, especially the one with hard rubber tires, that does the greatest damage to our highways.

■ Relator also contends that the provision of the law imposing the ton-mile tax is void because it classifies motor trucks in such a way as to discriminate against the trucks of the relator and to deny it equal protection of the laws. Fundamentally this contention raises the question of the power of the legislature to classify the motor vehicles that use the state highways.

Classification is a legislative question in all cases "where there are such general characteristics of the members of the class as to reasonably call for special legislative treatment. . . . All that is required is that there must be, in general, some reasonable basis on general lines for the division, all reasonable doubts to be resolved in favor thereof. There ends the judicial and commences the legislative function, each being dominant in its particular field." *Mehlos v. Milwaukee,* 156 Wis. 591, 605, 146 N. W. 882.

"As to the cogency or propriety of either the regulations made or of the importance of the distinctions, as we have so often said, the courts have little concern. Those subjects rest with the legislature, and only when the court, in the

exercise of the utmost deference toward that other branch of the government, is compelled to say that no one in the exercise of human reason and discretion could honestly reach a conclusion that distinctions exist having any relation to the purpose and policy of the legislation, can it deny it validity." *State v. Evans,* 130 Wis. 381, 385, 386, 110 N. W. 241.

The classification here in question is based on a ground that obviously distinguishes the trucks of the relator from all the other motor trucks that are exempted from the operation of this law by the fact that they are interurban common carriers. None of the excepted vehicles come within that classification. They are either confined in their operation to a local area or they are limited to the carriage of limited classes of freight or passengers. None of them hold themselves out as ready to serve the general public indiscriminately in interurban transportation. They are confined to particular classes of passengers, like school children or guests at hotels, or to particular classes of freight, like dairy, farm, agricultural, or horticultural products. In the case of the products of the farm the further limitation is imposed that the exemption shall apply only where the product of the farm is being transported "from the point of production to the primary market," that is, where the motor truck is performing the service which is ordinarily performed by the farmer when he markets his own products. A motor vehicle that is devoted exclusively to the marketing of farm products is not a common carrier in the same class with relator because it is not held out to be a vehicle that serves all the public indiscriminately.

The motor vehicle that is employed exclusively in handling freight within cities and villages or between contiguous cities and villages is not a common carrier operating between fixed termini and over a regular route. This fact alone is a sufficient basis for the classification. But there is another cogent reason for this classification. The law imposes no ton-mile

tax for any mileage within the limits of any city or village. The mileage that is subject to the tax is that which is wholly outside the limits of all cities and villages. So that so far as the imposition of the ton-mile tax is concerned, the relator is put upon the same basis as are these motor vehicles which are engaged in the handling of freight in local communities.

■ Closely associated with this question of the exemption of vehicles used in local trucking is the provision of sub. (2) of sec. 194.11 of the Statutes that no such motor vehicle shall be operated "within or through any city or village unless and until the consent of such city or village to such operation and also the approval thereof to the proposed routes be first obtained, and any such city or village, either as a condition to such consent or approval or otherwise, may require reasonable compensation for the repair and maintenance of pavements and bridges and compensation for the regulation of street traffic, and for any further expense occasioned by the operation of such motor vehicle or vehicles." Under this provision the compensation to be paid to these municipalities for the use of the streets which have been constructed by them is left to be determined by the municipalities themselves. There is no proof that any unreasonable burden has been imposed upon the relator, or that any unreasonable routing has been prescribed by any municipality. In the absence of proof, it will be assumed that these governmental agencies will exercise the power vested in them in a reasonable manner. Should they attempt to go beyond the bounds of reason, the relator will always be entitled to relief.

■ The fact that the law requires trucks to pay a ton-mile tax that is double that imposed upon busses does not amount to such an unreasonable discrimination as to render this statute void. The ton-mile tax in the case of both busses and trucks is based upon the load that would be carried if they were always loaded to capacity. The proof establishes the

fact that busses operate with an average load of twenty-nine per cent. of capacity, while the average load of the trucks is seventy-five per cent. of capacity. These trucks are heavier and do greater damage to the highway. They should therefore make a larger contribution for the use of the highway.

In passing on this question it should be noted that interurban busses are required to pay a higher license fee than that required of trucks. If we assume that the relator was operating passenger busses of the same weight and carrying capacity as its trucks, its combined ton-mile tax and license fee would be within $50 of the same amount which it now pays for the ton-mile tax and license fee for its trucks. There is no such discrimination as would warrant judicial interference with legislative action. "There need not be equality between different classes, unless the inequality is so great that it evinces a purpose to destroy or unreasonably hamper one class as against the other." *State ex rel. Transportation Asso. v. Zimmerman,* 181 Wis. 552, 560, 561, 196 N. W. 848.

■ The ton-mile tax does not impose an unlawful burden on interstate commerce. Carriers who use the highways of a state in carrying on interstate commerce "may be required to contribute to their cost and upkeep." *Clark v. Poor,* 274 U. S. 554, 557, 71 Lawy. Ed. 1199, 1201, 47 Sup. Ct. 702; *Interstate Busses Corp. v. Blodgett,* 276 U. S. 245, 72 Lawy. Ed., Adv. Op. No. 7, page 243, 48 Sup. Ct. 230. A state which has, at its own expense, furnished special facilities for the use of those engaged in intrastate and interstate commerce, "may exact compensation therefor, and, if the charges are reasonable and uniform, they constitute no burden on interstate commerce. . . . Such regulations are deemed to be reasonable and to affect interstate commerce only incidentally and indirectly." *Michigan Pub. Util. Comm. v. Duke,* 266 U. S. 570, 576, 69 Lawy. Ed. 445, 449, 45 Sup. Ct. 191.

■ The court finds no ground upon which it can hold that this law has violated any of the constitutional rights of the relator. "Where a state is exercising the power to impose a license or privilege tax its field is a broad one, and the judiciary cannot interfere with the exercise of such power unless it shows a purpose to prohibit or unreasonably interfere with a business which is not in itself injurious to the public health or morals. . . . It exercises such powers in the field of license, privilege, occupational and revenue measures operating upon persons or property where the rule of uniformity of taxation does not obtain, and where the judiciary can interfere only in case it is apparent that the measure attacked seeks to destroy or unreasonably hamper a legitimate business or occupation." *State ex rel. Transportation Asso. v. Zimmerman,* 181 Wis. 552, 561, 562, 196 N. W. 848.

■ Relator's real basis of attack seems to be that it does not have anything left with which to pay dividends after it has paid this ton-mile tax. Manifestly the ability of the relator to make a profit cannot be the factor that determines whether this law constitutes a valid exercise of legislative power. If this were the test, this law would be valid as to the carrier by motor vehicles who testified that he conducted his business at a profit under this law, while it would be invalid so far as the relator was concerned because it does not make a profit. This is not and cannot be the measure of the power of the state to exact compensation for the use of its highways by those who are conducting a private business for gain over the same. The statute is a valid exercise of legislative power. If the compensation fixed for the use of the highways is such that the relator does not so manage its business as to make a profit, it cannot ask that the state forego its right to compensation for the use of its highways for business purposes, even if it should result in the discontinuance of relator's business. *Erie R. Co. v. Board of*

*Pub. Util. Comm'rs,* 254 U. S. 394, 411, 65 Lawy. Ed. 322, 334, 41 Sup. Ct. 169.   To prevail in this action relator must "show that the aggregate charge bears no reasonable relation to the privilege granted."   *Interstate Busses Corp. v. Blodgett,* 276 U. S. 245, 72 Lawy. Ed., Adv. Op. No. 7, pp. 243, 244, 48 Sup. Ct. 230.

It cannot be said that an aggregate annual charge which is less than the cost of supplying itself with half a mile of concrete roadway bears no reasonable relation to the privilege granted, where the state supplies relator with approximately 150 miles of hard-surfaced roads, most of which is paved with concrete, and all of which is policed and maintained without expense to relator, over which the relator is given the exclusive right to operate interurban freight trucks so long as it meets the needs of the public.   The questions here presented lie within the field of legislative discretion, whose boundaries "are not exceeded unless a purpose to destroy or unreasonably interfere with a legitimate business is apparent.   We find no such purpose in the law attacked." *State ex rel. Transportation Asso. v. Zimmerman,* 181 Wis. 552, 562, 196 N. W. 848.

*By the Court.*—Judgment affirmed.