NANCE *et al. v.* HARRISON, Comptroller-general.

No. 9123. MARCH 2, 1933.

A. *Walton Nall, Norman DeKrasner,* and *J. Ira Harrelson,* for plaintiffs.

*Lawrence S. Camp, attorney-general, T. R. Gress* and *W. K. Meadow, assistant attorneys-general,* for defendant.

BELL, J.   C. W. Nance and others, doing business in the name of Nance Transfer Company, filed a suit in equity to enjoin William B. Harrison, Comptroller-general of Georgia, from enforcing the provisions of the act of the General Assembly approved March 31, 1931, known as the motor-carriers tax act.   Ga. L. Ex. Sess. 1931, p. 63.   After hearing evidence, the trial judge refused an injunction, and the plaintiffs excepted.   The main purpose of the act referred to, as indicated by its caption, was "to raise revenue by levying taxes on those who pursue the business of operating motor-vehicles on the public highways of this State for the carrying of passengers or property, or both, for hire; to make exceptions and exemptions; [and] to provide for the collection and enforcement of the tax."   In section 1 the term "motor carrier" is defined to mean all persons, firms, associations or corporations engaged in the business of transporting for hire by motor-vehicle persons or property, or both, on the public highways of this State, whether as common carriers or not.   In section 2 taxes are levied upon common carriers of passengers and of goods, and also upon carriers of passengers and of goods for hire other than common carriers.   In paragraph G of section 2 it is provided that "the tax laid herein shall not apply to motor-vehicles engaged exclusively in the transportation of agricultural and/or dairy products and horticultural [products] between any of the following points: farm, market, gin, warehouse, or mill, where the weight of the load does not exceed 15,000 pounds, whether such vehicle is owned by the owner or producer or not."   In paragraph H(3) of section 2 it is declared that the tax shall not apply "to taxicabs or trucks of baggage and/or transfer companies which are operated principally within incorporated cities or towns,

but which may, in the prosecution of their regular business, occasionally go beyond the limits of the city or town in which they operate, and which do not operate between such city or town and fixed termini outside such city or town limits, including trucks of baggage and/or transfer companies which do not operate outside of cities and towns more than once a week." In the petition it is alleged that the plaintiffs are ordinary private draymen owning a very limited number of vehicles and operating principally within the City of Gainesville; and that while they occasionally go beyond the limits of the city, they have no fixed termini outside such city or town limits, and do not regularly go beyond such town or city limits. The first contention made in the petition is that the plaintiffs are exempt from liability under the provision last quoted. It is alleged that the Comptroller-general through his officers and agents is attempting to force the plaintiffs to pay the tax as provided by the statute, notwithstanding they are expressly exempted from liability thereunder. The second contention is, that, if the plaintiffs are not entitled to the exemption claimed, the entire act is unconstitutional and void, because, in undertaking to exempt carriers operating chiefly within cities and towns, it violates the due-process and equal-protection clauses of both the State and Federal constitutions, and the tax-uniformity clause of the State constitution. The third contention is that the provision contained in paragraph G of section 2, as quoted above, allows an arbitrary and unreasonable discrimination in favor of carriers of farm, dairy, and horticultural products as therein specified, as against the plaintiffs, who are engaged in the hauling of other products such as dry goods, hardware, furniture, groceries, and other useful commodities, and chattels. In this attack upon the statute the same constitutional provisions are again invoked.

◼ The judge was authorized to find against the contention that the plaintiffs were exempt under the provisions of paragraph H(3) of section 2, as to carriers operating principally within the limits of incorporated towns and cities. The evidence did not demand the inference that the motor-carrier business conducted by the plaintiffs fell within the class made exempt by this subsection. Moreover, the paragraph last referred to was repealed by the act of August 28, 1931, and in lieu thereof a new paragraph was inserted. Ga. L. 1931, pp. 90, 93. The plaintiffs do not claim exemption under the new classification.

■ The contention that the act of March 31, 1931, is invalid because of the alleged discrimination in favor of the class referred to in the preceding division must necessarily fail, in view of the fact that the provision alleged to embrace the unwarranted classification has been repealed. Even if there had been no repeal of the provision under consideration, it could not be said that the classification was made without reason, nor, therefore, that the allowance of the exemption stated operated to deprive the plaintiffs of the equal protection of the laws, or otherwise rendered the act unconstitutional for any reason assigned. Bekins Van Lines v. Riley, 280 U. S. 80 (50 Sup. Ct. 64) ; Northern Transportation Co. v. Railroad Commission, 196 Wis. 410 (220 N. W. 390).

■ Passing to the third and last contention, we notice again that the act of March 31, 1931, has been amended in a matter relating to the basis of the attack upon its constitutionality. The plaintiffs have assailed the statute upon the ground that in paragraph G of section 2 there is an arbitrary and unreasonable discrimination in favor of carriers of agricultural, dairy, and horticultural products. No mention is made of the act of August 28, 1931, in which the section relating to these subjects was also repealed and a new section substituted therefor, as follows : "The tax laid herein shall not apply to motor-vehicles engaged exclusively in the transportation of agricultural, dairy, and/or horticultural products from the farm to the market, or gin, or warehouse, or mill, where the combined weight of the vehicles and load does not exceed 20,000 pounds, and from market or other points and places mentioned in this sentence to farm."

But, to give the plaintiffs the benefit of the law as it now exists, and to treat the petition as attacking the amended statute because of the exemption contained in the amendment, it is our opinion that the act is not unconstitutional for any reason asserted in the petition. The statute under review is a revenue or tax-raising measure. See Carley v. Snook, 281 U. S. 66 (50 S. E. 204). The fact that such a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction. As was said in Brown-Forman Co. v. Kentucky, 217 U. S. 563 (30 Sup. Ct. 578, 54 L. ed. 883) : "A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses, or occupations which

may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." See also State Board of Tax Commissioners *v.* Jackson, 283 U. S. 527 (51 Sup. Ct. 540). In Citizens Telephone Co. *v.* Fuller, 229 U. S. 322 (33 Sup. Ct. 833, 57 L. ed. 1206), numerous decisions of the Federal Supreme Court were reviewed for the purpose of illustrating the power of the legislature of a State over the subject of taxation and the range of discrimination that may be exercised in classification. In that case it was said, in effect, that in exercising this power the State has the right to select the differences upon which the classifications shall be based, and they need not be great or conspicuous, provided they are not exercised in a spirit of prejudice and favoritism, but have at last some basis in reason. It was further declared, that, when thus defined and thus limited, such power of classification "is a vital principle, giving to the Government freedom to meet its exigencies, not binding its action by rigid formulas, but apportioning its burdens and permitting it to make those 'discriminations which the best interests of society require.'"

In Quong Wing *v.* Kirkendall, 223 U. S. 59 (32 Sup. Ct. 192, 56 L. ed. 350), it was held that a State does not deny the equal protection of the laws by adjusting its revenue laws to favor certain industries. The law there in question was a statute of the State of Montana, which imposed a license tax of $10 upon all persons engaged in the laundry business other than the steam-laundry business, with a proviso that it should not apply to women so engaged where not more than two women were employed. In the opinion it was said: "A State does not deny the equal protection of the laws merely by adjusting its revenue laws and taxing system in such a way as to favor certain industries or forms of industry. Like the United States, although with more restriction and in less degree, a State may carry out a policy, even a policy with which we might disagree. . . It may make discriminations if founded on distinctions that we can not pronounce unreasonable and purely arbitrary. . . If the State sees fit to encourage steam laundries and discourage hand laundries, that is its own affair. And if again it finds a ground of distinction in sex, that is not without precedent."

In Cargill Co. *v.* Minnesota, 180 U. S. 452 (21 Sup. Ct. 423, 45 L. ed. 619), it was held that a State had the right to impose a license tax upon warehouses situated on rights of way of railroads, and to exempt warehouses not so situated but doing the same business. In Bradley *v.* Richmond, 227 U. S. 477 (33 Sup. Ct. 318, 57 L. ed. 603), the right to levy a tax on private bankers different from that laid on other bankers was upheld.

In American Sugar Refining Co. *v.* Louisiana, 179 U. S. 89 (21 Sup. Ct. 43, 45 L. ed. 102), specific reference was made to agriculture, in the construction and application of a statute of Louisiana imposing a tax upon the business of refining sugar and molasses, but exempting "planters and farmers grinding and refining their own sugar and molasses." It was held that the statute did not deny sugar refiners the equal protection of the law. In the opinion it was said: "The act in question does undoubtedly discriminate in favor of a certain class of refiners; but this discrimination, if founded upon a reasonable distinction in principle, is valid. Of course, if such discrimination were purely arbitrary, oppressive, or capricious, and made to depend upon differences of color, race, nativity, religious opinions, political affiliations, or other considerations having no possible connection with the duties of citizens as taxpayers, such exemption would be pure favoritism, and a denial of the equal protection of the laws to the less-favored classes. But from time out of mind it has been the policy of this government, not only to classify for purposes of taxation, but to exempt producers from the taxation of the methods employed by them to put their products upon the market. The right to sell is clearly an incident to the right to manufacture or produce, and it is at least a question for the legislature to determine whether anything done to prepare a product most perfectly for the needs of the market shall not be treated as an incident to its growth or production. The act is not one exempting planters who use their sugar in the manufacture of articles of a wholly different description, such as confectionery, preserves, or pastry, or such as one which should exempt the farmer who devoted his corn or rye to the making of whisky, while other manufacturers of these articles were subjected to a tax. A somewhat different question might arise in such case, since none of these articles are the natural products of the farm—such products only becoming useful by being commingled with other ingredients.

Refined sugar, however, is the natural and ultimate product of the cane, and the various steps taken to perfect such product are but incident to the original growth."

A motor-carriers act of the State of Minnesota contained an exemption clause similar to that involved in the case at bar. In considering the validity of the act in view of such provision, the Supreme Court of that State said: "The exemption of transportation companies engaged exclusively in transporting agricultural, horticultural, dairy, or other farm products from the point of production to the primary market, and motor vehicles used exclusively in transporting or delivering dairy products, is not unreasonable nor arbitrary. The State calls attention to section 18 of article 1 of the constitution, which permits one to sell or peddle agricultural products produced by himself without obtaining a license. In Minnesota Wheat Growers &c. v. Huggins, 162 Minn. 471, 480 (203 N. W. 420), the court said that this provision was a recognition that the tillers of the soil are in a different position in reference to the marketing of their products. This case gives no direct help. But the legislature might conclude that the conditions surrounding the transportation of agricultural and dairy products from the point of production so differ from ordinary common-carrier transportation that a certificate of public convenience and necessity should not be required. Favoritism might have been intended, but we do not assume it nor find it. The classification seems on a fair basis. It may be noted that such a classification is sustained as not arbitrary or unconstitutional as a basis for taxation." State v. Le Febvre, 174 Minn. 248 (219 N. W. 167). See also Raymond v. Holm, 165 Minn. 215 (206 N. W. 166) ; McReavy v. Holm, 166 Minn. 22 (206 N. W. 942) ; Northern Transportation Co. v. Railroad Commission, supra. Practically the same question as presented by the present record was passed upon by this court in *Southern Transfer Co.* v. *Harrison,* 171 *Ga.* 358 (155 S. E. 338), where the validity of the general tax act of 1927 was involved. Mr. Justice Hines, speaking for the court, said: "The exemption of persons and corporations engaged exclusively in hauling farm produce, live stock, and fertilizers is not unreasonable or arbitrary," and does not "violate the due-process clause of the constitution of this State or the due-process clause of the fourteenth amendment to the constitution of the United States." See, to the same effect, *City of Atlanta* v. *Kirk,* 174 *Ga.* 763 (2) (164 S. E. 64).

According to a statement in the brief of counsel for the plaintiffs, the instant case hardly would have been brought to this court, except for the decision of the Supreme Court of the United States in Smith *v.* Cahoon, 283 U. S. 553 (51 Sup. Ct. 582, 75 L. ed. 1264) ; and we may state with equal frankness that except for that decision the present discussion would not have been extended to anything like its present proportions. In view of the many decisions recognizing the validity of distinctions and discriminations certainly not more substantial than that which is made in the statute under consideration, we can not assume that the Supreme Court intended to hold in the Cahoon case that a State may not constitutionally exempt agricultural, dairy, and horticultural products from a statute the sole object of which is to raise revenue by levying a tax upon motor-carriers for hire. The Florida statute dealt with in that case required that a bond or insurance policy approved by the State railroad commission should be furnished by the carrier in order to afford security for the public against injuries, as well as for the protection of persons and property transported. It was held that this regulation, in order to be sustained, must be deemed to relate to the public safety; and Mr. Chief Justice Hughes, speaking only with reference to this regulation, said : "There does not appear to be the slightest justification for making a distinction between those who carry for hire farm products, or milk or butter, or fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities. So far as the statute was designed to safeguard the public with respect to the use of the highways, we think that the discrimination it makes between the private carriers which are relieved of the necessity of obtaining certificates and giving security, and a carrier such as the appellant, was wholly arbitrary and constituted a violation of the appellant's constitutional right. 'Such a classification is not based on anything having relation to the purpose for which it is made.'" Obviously, there is a wide difference between the power of classification which a State may exercise in a taxing measure and that which it may exercise in a statute designed only to promote the public safety. From the proposition that the legislature could not constitutionally exempt a carrier of farm products from a provision which required carriers in general to give a bond or furnish an insurance policy for the public safety, it by no means follows that such a law-making

body may not reasonably and lawfully exempt such a carrier from a statute where the sole purpose is to raise revenue by levying a tax upon motor carriers for hire, whether common carriers or not.

There are several bases of distinction which may apply to agricultural, dairy, and horticultural products, as distinguished from other products and commodities offered for transportation. (1) Many of the farm products must be brought from remote sections unaccommodated by the better system of roads,—in some cases not even by a public road. Some inducement to carriers might be necessary in order to insure adequate service in the transportation of such commodities. (2) It is a matter of common opinion, and one that is doubtless well justified by the facts, that the farm lands of the State, being visible and tangible, have been accustomed to bear an undue proportion of the taxes; and even here the legislature might have found a rational basis for an indirect exemption of agricultural, dairy, and horticultural products as a means of equalizing the burden. Every one knows that as a general rule a tax of this kind finally reaches the consumer of the product, or user of the service; and hence an exemption of carriers of such products is to be taken as an exemption of the products themselves, and not of the carrier. (3) In Stephenson v. Binford, 287 U. S. 251 (53 Sup. Ct. 181), the Supreme Court of the United States, having under review a statute of the State of Texas relating to motor carriers, said: The findings of the trial court "and the evidence contained in the record conclusively show that during recent years the unregulated use of the highways of the State by a vast and constantly growing number of private-contract carriers has had the effect of greatly decreasing the freight which would be carried by railroads within the State, and, in consequence, adding to the burden upon the highways. Certainly, the removal or amelioration of that burden, with its resulting injury to the highways, interference with their primary use, danger and inconvenience, is a legitimate subject for the exercise of the State legislative power. And that this was one of the chief ends sought to be accomplished by the provisions in question, the record amply establishes." In like manner, the legislature of Georgia could have had the purpose of relieving to some extent the burden of transportation which had been placed upon the highways, by affording a motive for diverting transportation to railroads; but this purpose could not have applied generally

to agricultural, dairy, and horticultural products, because these must first make the trip from the places of their production, and the railroads can not go to such places.

It may be that other bases of distinction could be added, but it is enough that even one reasonable ground of distinction may be found. From what has been said we think it will be clear that the present case is distinguished from Smith v. Cahoon, supra, the question here involved being materially different from that presented in the Cahoon case. It can not be said here, as in that case, that the "classification is not based on anything having relation to the purpose for which it is made." The act of March 31, 1931, does not contravene any of the constitutional provisions invoked by the plaintiffs. It follows that the judge did not err in refusing an injunction.    *Judgment affirmed.   All the Justices concur.*