## AERO MAYFLOWER TRANSIT COMPANY *v.* GEORGIA PUBLIC SERVICE COMMISSION *et al.*

432

No. 10070.  September 15, 1934.

434

*Watkins, Asbill & Watkins,* for plaintiff.

*M. J. Yeomans, attorney-general, J. J. E. Anderson, J. T. Goree,* and *B. D. Murphy, assistant attorneys-general,* for defendant.

ATKINSON, J. ■ The ruling announced in the first headnote does not require elaboration.

■ In section 4(a) of the motor-carrier act approved March 31, 1931 (Ga. L. Ex. Sess. 1931, pp. 99-102) it is declared: "No

motor carrier shall, after this act goes into effect, operate without first obtaining from the commission, after hearing under the provisions of this act, a certificate of public convenience and necessity, pursuant to findings to the effect that the public interest requires such operation." In section 18 it is declared: "Every motor carrier shall, as soon as the certificate is issued, and annually on or before each succeeding January 1st, as long as such certificate remains in force, make application to the commission for registration and license of all motor vehicles to be operated under said certificate, and upon payment of a fee of $25 for each vehicle to the comptroller-general shall be entitled to register the same and receive a license therefor. The sum or sums derived herein from the issuance and transfer of certificates of convenience and necessity by the comptroller-general, shall be paid to the State treasurer, who shall keep such sums thus paid to him in a separate fund to be known as the motor-vehicle fund. From such funds thus derived the State treasurer shall, upon proper warrant from the Governor, pay all the expenses and salaries of every character as due and provided herein. Such sum or sums as may be left after such salaries and supervisory expenses have been paid, as may remain unexpended on the 1st day of January each year, shall be paid to the State Highway Department for use in maintenance and repair of the highways, as in the discretion of the Highway Board may be directed." In section 21 it is declared: "The commission is hereby authorized to employ such persons as may be necessary, in the discretion of the commission, for the proper enforcement of the provisions of this act, the salaries for such employees to be fixed by the commission. The traveling expenses of the commission and its employees incurred in the performance of this act shall be paid, as similar expenses of the commission, out of the motor-vehicle fund." Thus section 18, considered in connection with sections 4(a) and 21, provides a charge for the use of the public highways of the State, and manifests a legislative intent, and expressly allocates the fee of $25 for each motor vehicle therein provided for (a) to the cost of administration and enforcing the provisions of the act, and (b) the cost of building, maintenance, and repair of the highways of the State. The prescribed fee applies indiscriminately whether the carrier be engaged in intrastate or interstate traffic or whether he be a common carrier or private carrier.

■ In the petition section 18 of the motor-carrier act of March 31, 1931, is alleged to be violative of article 1, section 8, paragraph 3, of the constitution of the United States (Civil Code, § 6644, par. 3), conferring upon the Congress power "to regulate commerce with the foreign nations, and among the several States, and with the Indian tribes," for the following reasons: "(a) The fee authorized by said section imposes an unjust, substantial, direct, and unreasonable burden on interstate commerce, and is more than an equivalent for the service rendered by the State authorities of Georgia in supervising and inspecting the interstate operations of plaintiff's motor vehicles. (b) Said fee as contained in said section is a flat annual charge per vehicle, substantial in amount, and the same for motor vehicles plying the highways continuously in local service and for interstate motor vehicles only making, as do the motor vehicles of plaintiff, trips at infrequent intervals upon the highways of the State of Georgia, and could not have been and was not designed as a measure of the cost of the supervision of interstate vehicles operating over the State highways. (c) Said fee as contained in said section is not predicated upon the need for or cost of regulation of vehicles operating in interstate commerce over the highways of the State of Georgia, and the amount of the fee is not dependent upon such cost of, or need for, regulation. Said fee does not arise with an increase in mileage traveled or with the weight actually carried on the highways of the State. Said fee does not vary in accordance with the size of vehicle operated over the State highways in interstate' commerce, nor does said fee vary in proportion to the use of the State highways. (d) Said fee as contained in said section, being a flat, annual charge of $25 for each vehicle, bears no reasonable relation to the actual cost of supervision and regulation of the operations of the trucks of plaintiff in interstate commerce through, into, and from Georgia, but is the same for a motor vehicle operating empty or loaded in full or in part only, and is the same regardless of the mileage traveled over the State highways or the time the vehicle operates in Georgia. (e) Said fee as contained in said section, being a flat, annual charge of $25 per vehicle, has no reasonable relation nor does it bear any relation to the cost of inspecting, controlling, or supervising the interstate business conducted by plaintiff or the operations of motor vehicles owned and operated by plaintiff in interstate com-

merce, and such registration fee is a direct, substantial burden upon interstate commerce, and the total thereof is in excess of any reasonable or just charge that might be levied by the State of Georgia to defray the expense of supervising, controlling, or inspecting the interstate business of plaintiff or the operations of its motor vehicles which operate only at infrequent intervals in interstate commerce upon the State highways of Georgia. (f) The registration fee prescribed by section 18 is not predicated upon or related to the use made or to be made of the highways of the State of Georgia by motor vehicles operating in interstate commerce, and the amount of the registration fee is not dependent upon such use or upon the need for regulating or policing said vehicles. (g) The registration fee prescribed by section 18 does not pretend to be imposed as reimbursement or compensation for the use of the State highways, but the funds arising from the registration fees are to be expended to enforce the police regulations prescribed in the act of which section 18 is part; and (h) The registration fee prescribed by section 18 is a flat, annual charge of $25 for each vehicle; said fee is not graduated according to the horse-power of the engine, the carrying capacity of the vehicle, or the use made of the State highway by the vehicle. Said fee does not take into consideration the practical measure of size, speed, or difficulty of control with respect to any vehicle, and the charge of $25 per vehicle is an unreasonable charge to assess against the motor vehicles of plaintiff, none of which vehicles are in excess of 3-ton carrying capacity and none of which operate except at infrequent intervals over the State highways in Georgia."

In Clark *v.* Poor, 274 U. S. 554 (47 Sup. Ct. 702), it was held: "A State regulation providing that, before operating over the State highways, a common carrier by motor shall apply for and obtain a certificate or permit therefor from a State commission, and shall pay an extra tax for the maintenance and repair of the highways and for the administration and enforcement of the laws governing their use, is constitutional though applied to carriers engaged exclusively in interstate commerce. . . That the tax so exacted is not all used for maintenance and repair of the highways; but some of it for defraying expenses of the commission in administration and enforcement of the act, and some for other purposes, is no concern of the taxpayer, it being assessed for a proper purpose and not

unreasonable in amount." In the opinion it was said: "The plaintiffs claim that, as applied to them, the act violates the commerce clause of the Federal constitution. They insist, that, as they are engaged exclusively in interstate commerce, they are not subject to regulation by the State; that it is without power to require that before using its highways they apply for and obtain a certificate; and that it is also without power to impose, in addition to the annual license fee demanded of all persons using automobiles on the highways, a tax upon them, under § 614-94, for the maintenance and repair of the highways and for the administration and enforcement of the laws governing the use of the same. The contrary is settled. The highways are public property. Users of them, although engaged exclusively in interstate commerce, are subject to regulation by the State to ensure safety and convenience and the conservation of the highways. Morris v. Duby, ante, p. 135 [47 Sup. Ct. 548]; Hess v. Pawloski, ante, p. 352 [47 Sup. Ct. 632]. Users of them, although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use. Hendrick v. Maryland, 235 U. S. 610 [35 Sup. Ct. 140, 59 L. ed. 385]; Kane v. New Jersey, 242 U. S. 160 [37 Sup. Ct. 30, 61 L. ed. 222]. Compare Packard v. Banton, 264 U. S. 140, 144 [44 Sup. Ct. 257]. There is no suggestion that the tax discriminates against interstate commerce. Nor is it suggested that the tax is so large as to obstruct interstate commerce. It is said that all of the tax is not used for maintenance and repair of the highways; that some of it is used for defraying the expenses of the commission in the administration or enforcement of the act; and some for other purposes. This, if true, is immaterial. Since the tax is assessed for a proper purpose and is not objectionable in amount, the use to which the proceeds are put is not a matter which concerns the plaintiffs."

In Continental Baking Co. v. Woodring, 286 U. S. 352 (52 Sup. Ct. 595), it was held: "The use of public highways by private intrastate and interstate carriers of goods by motor may be conditioned by the State upon the carrier's obtaining a license, complying with reasonable regulations, paying a reasonable license fee and a tax, for expenses of highway administration and maintenance and reconstruction of the highways covered by the license, and upon the

filing of an insurance policy as security against injuries from the carrier's negligent operations to persons and property other than the passengers and property he carries. . . In the exercise of its right to demand compensation for the special highway facilities it has provided, and of its power to regulate the use of its highways in the interest of the public safety, a State may properly treat motor vehicles as a special class, because of the special damage to the highways and special dangers to the public attending their operations." In Interstate Transit Inc. v. Lindsey, 283 U. S. 183 (51 Sup. Ct. 380), it was said: "While a State may not lay a tax on the privilege of engaging in interstate commerce (Sprout v. South Bend, 277 U. S. 163 [48 Sup. Ct. 502]), it may impose even upon motor vehicles engaged exclusively in interstate commerce a charge, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and of regulating the traffic thereon. . . As such a charge is a direct burden on interstate commerce, the tax can not be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expense of regulating motor traffic. This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use (Interstate Busses Corp. v. Blodgett, 276 U. S. 245 [48 Sup. Ct. 230]), or by the express allocation of the proceeds of the tax to highway purposes, as in Clark v. Poor, supra, or otherwise. Where it is shown that the tax is so imposed, it will be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways or is discriminatory. . . Compare Interstate Busses Corp. v. Holyoke Street Ry., 273 U. S. 45, 51 [47 Sup. Ct. 298]. But the mere fact that the tax falls upon one who uses the highway is not enough to give it presumptive validity." While pronouncing these principles, the decision denounced the tax in question, because upon construction of the statutes it appeared that the tax was not exacted for construction and maintenance of the highways, "but merely as a privilege tax on the carrying on of interstate business." In Hicklin v. Coney, 290 U. S. 169 (54 Sup. Ct. 142, 78 L. ed. 143), it was held: "A State, in exercising its control over the use of highways, may make reasonable regulations governing that use by private contract carriers. . . State regulations of the use of highways by private

contract carriers may require, on the part of interstate as well as intrastate carriers, the payment of reasonable license fees and the filing of insurance policies to protect the interests of the public by securing compensation for injuries to persons and property from the negligent operations of such carriers." Applying the foregoing principles to the instant case and giving to section 18 of the motor-carrier act effect as construed in the second division of this opinion, that provision of that act does not violate the commerce clause of the Federal constitution for any of the reasons set forth.

■ Another attack upon section 18 of said act is that it violates the due-process and equal-protection clauses of the 14th amendment to the constitution of the United States (Civil Code, § 6700) for the following reasons: "(a) Said registration fee prescribed by section 18 bears no relation to the cost of regulating motor-vehicle traffic upon the State highways; motor vehicles operating continuously in intrastate commerce over the highways of Georgia, and of more carrying capacity than those of plaintiff, are charged the same fee as plaintiff for more regulation and policing than is required for the vehicles of plaintiff, and the registration fee is discriminatory against plaintiff and the result of an arbitrary classification. (b) The registration fee prescribed by section 18 could not have been designed as a reasonable measure of the cost of policing and regulating motor vehicles operating over the highways of the State of Georgia, because the fee is a flat, annual charge per vehicle, regardless of the size or extent of use of the vehicle upon the State highways, and many intrastate vehicles ply the State highways of Georgia continuously, while the vehicles operated by plaintiff only come into or pass through the State of Georgia at infrequent intervals; and therefore the enforcement of said registration fee would discriminate against plaintiff and other interstate operators in favor of intrastate operators, and subject plaintiff and other interstate operators to the payment of unjust, unreasonable, and excessive regulation charges; and (c) That the registration fee prescribed by section 18, sought to be imposed for inspecting, controlling, and supervising the operations of the motor vehicles of plaintiff, is discriminatory in that section 2 of the motor-carrier act of 1931 . . exempts from the provisions of the act of which section 18 is a part 'motor vehicles engaged exclusively in the transportation of agricultural and/or dairy products between any

of the following points: farm, market, gin, warehouse, or mill, where the weight of the load does not exceed 10,000 pounds, whether such motor vehicle is owned by the owner or producer of such agricultural or dairy products or not, as long as the title remains in the producer;' and such exemptions are an unreasonable and arbitrary discrimination against plaintiff and an arbitrary classification, prejudicial to plaintiff, and requiring plaintiff to pay an unjust, unreasonable, and discriminatory portion of the total registration fees charged for the inspection, control, and supervision of motor traffic and motor business in Georgia; and such exemptions are in violation of the due-process and equal-protection clauses of the fourteenth amendment, since there is the same need for the inspection, control, and supervision of the business and trucks of common carriers, contract carriers, and private carriers hauling the excepted articles over the State highways of Georgia as for the inspection, control, and supervision of the business and vehicles of plaintiff, which only operate at infrequent intervals over the same highways."

Section 18 of the motor-carrier act, as construed in the second division above, applies to all motor-vehicle carriers indiscriminately, whether engaged in interstate or intrastate commerce. The fact that a flat rate is charged for each motor vehicle does not, without more, furnish ground for a charge of discrimination, nor does it furnish ground of such charge as applied to the plaintiff as a private carrier exclusively in interstate commerce, operating many motor vehicles which interchangeably come into this State at intervals. A motor vehicle provided with the prescribed license could operate over the highways of the State continuously, and the plaintiff should adjust the movements of its motor vehicles to the requirements of the law. The language "as long as the title remains in the producer" limits the operation of the exemption referred to above to such an extent that the only property in the class mentioned which is exempted is property where "the title remains in the producer." This is a reasonable classification in favor of the producer, which will enable movement of the products over the highways so long as title remains in him without exaction of the prescribed fee. The statute involved in Smith *v.* Cahoon, 283 U. S. 553 (51 Sup. Ct. 582), did not contain any such words of limitation as referred to above, and the cases are distinguishable.

In *Nance* v. *Harrison,* 176 *Ga.* 674 (3) (169 S. E. 22), it was held: "The act of March 31, 1931, as amended by the act of August 28, 1931, levying a tax upon motor carriers in general, does not, by exempting motor carriers of agricultural, dairy, and horticultural products, deny the equal protection of the laws to a motor carrier for hire who is not engaged in the transportation of such products. The act does not violate any constitutional provision, either State or Federal, as invoked by the plaintiffs." See also Continental Baking Co. *v.* Woodring, and Hicklin *v.* Coney, supra. Section 18 of the motor-carrier act approved March 31, 1931, does not violate the equal-protection and due-process clauses of the Federal constitution for any reason assigned.

■ It was further charged in the petition: "That the entire motor-carrier act of 1931, . . including section 18 thereof, is unconstitutional and unenforceable, for the reason that section 2 of said act exempts from the provisions of the act, including the requirement of bond or indemnity insurance in sections 7 and 30 and payment of registration fee in section 18, certain operators as shown in the preceding paragraph numbered 15, subparagraph (c), which said paragraph is by reference made part hereof. And such exemptions are in violation of the constitution of the United States and of the commerce clause thereof, contained in paragraph 3 of section 8 of article 1 of the constitution of the United States, . . and said exemptions are in violation of the due-process and equal-protection of the law clauses of the fourteenth amendment to the Federal constitution, copied heretofore, since the exemptions are an arbitrary and unreasonable classification, discriminating against plaintiff in favor of common carriers, contract carriers, private carriers, and owners transporting the said excepted articles, and burdens interstate commerce. Section 2 of said act, being unconstitutional, renders the entire act unconstitutional." The hauling of farm products by motor vehicles as just referred to, and the requirements as to giving bond as therein mentioned, are proper matters for classification, and the exemptions based on such classification do not render the act unconstitutional. *Nance* v. *Harrison,* supra; Continental Baking Co. *v.* Woodring, and Hicklin *v.* Coney, supra.

■ The court did not err in dismissing the petition on demurrer.
*Judgment affirmed. All the Justices concur.*

444

· A decision was rendered in this case on September 15, 1934, affirming the judgment of the trial court. On motion for a rehearing the opinion them delivered ·is withdrawn, and the foregoing opinion is substituted.

GILBERT, J. I concur specially in the judgment of affirmance, for two reasons: (1) Because the facts alleged do not afford jurisdiction for the grant of injunction. (2) Because, as shown in the opinion, the trial court properly held that the statute was not unconstitutional for any reason assigned.