28571. ALEXANDER FILM COMPANY *v.* BRITTAIN.

DECIDED OCTOBER 16, 1940.

*Sam S. Harben, Joe K. Telford,* for plaintiff.

*Boyd Sloan,* for defendant.

FELTON, J. The Alexander Film Company sued C. S. Brittain in a justice's court, for an amount alleged to be due under a contract between the parties. The jury found for the defendant. Certiorari was overruled by the superior court, and the plaintiff excepted.

The suit was for eight and one-half months advertising service, starting September 3, 1938, at $14.08 per month, a total of $119.68, less $56.32 credits, leaving a balance due of $63.36. The pertinent parts of the contract are as follows: "The undersigned advertiser, for a continuous period of 12 months from the first shipping date, subscribes to a series of advertising films, and authorizes the Alexander Film Company to make 26 RC Cola shipments of film, in the manner indicated below, to the theatre or theatres listed, for a total of 26 weeks display. One shipment each 2 weeks to the State Theatre of Gainesville. . . Undersigned advertiser agrees to pay for such service and production in installments of $14.08 per month for 12 months. The first installment is due immediately upon the signing hereof. The second installment shall be due thirty days after the first shipment of service from the Film Company's studio, and the remaining installments shall be due every thirty days thereafter. Receipt of $14.08 is acknowledged. . . . This agreement is not exclusive. However, the Film Company agrees to use its best efforts to secure contracts with noncompeting merchants whenever possible. Service under this contract is subject to suspension by the Film Company for occasional short intervals, to accommodate national or sectional service, if necessary, by reason of theatre limitation of film footage. The advertiser will accept additional rental service free in compensation for any Film Company defaults in service or screening, or for suspensions to accommodate national or sectional service. . . This subscription shall be binding on the successors and assigns of both parties. No verbal statements additional to or modifying the terms hereof are to be valid. This subscription shall not be binding on the Film Company until countersigned and acknowledged by a home-office official." The defendant's answer as amended

set up that the defendant bottled and sold soft drinks, a seasonal business, and that after the execution of the contract the plaintiff agreed to furnish and charge for the service contracted for during the summer months, and not for a continuous period. He alleged that this agreement was breached, in that the plaintiff furnished the service for eight and a half months during the winter and cold months, which he alleged was of no benefit to him. He prayed for judgment against the plaintiff in the amount paid to it on the contract.

■ The testimony of the defendant, to the effect that before the contract was executed the plaintiff's agent stated to him that the service would be suspended during the winter, was objected to on the ground that prior and contemporaneous statements and agreements were merged in the contract, and that the testimony was inadmissible to add to, vary, or contradict the terms of the contract. The court erred in overruling this objection, as the statement, or agreement, if it can be so designated, was in conflict with the plain and unambiguous terms of the contract, which was complete and was presumed to contain all of the agreements and undertakings of the parties thereto.

■ The testimony of the defendant, to the effect that the plaintiff's agent agreed after the contract was signed that the service would be suspended during the winter months, was objected to on the ground that there was no consideration therefor. The court erred in overruling this objection. Since there was no consideration for the promise, the Film Company was not bound by it in law, if it was made.

■ The contract was not ambiguous. The provision that "service under this contract is subject to suspension by the Film Company for occasional short intervals, to accommodate national or sectional service, if necessary, by reason of theatre limitation of film footage," does not refer to suspensions during the winter months, but refers only to a privilege granted to the Film Company when suspensions were necessitated by reason of theatre limitations on film footage. The rule that the construction put upon the contract by the parties before or after its execution may be considered in arriving at its true meaning does not apply to an unambiguous contract. If it did, every contract could possibly be subjected to alteration, additions, and contradictions by parol

agreements. The evidence did not authorize the jury to find that the contract was ambiguous and that it provided for suspension during winter months.

█ The provision that "this agreement is not exclusive" does not mean that the contract is not complete, but that the film company had the right to sell its service to competitors of the defendant.

The court erred in not sustaining the certiorari.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*