## 65455. GEORGIA CASUALTY & SURETY COMPANY et al. v. JERNIGAN et al.

CARLEY, Judge.

Appellee-plaintiffs, husband and wife, were involved in a collision between their automobile and an unloaded pulpwood truck being driven by appellant-defendant Ash. The collision occurred in Greene County. The pulpwood truck was titled in the name of appellant-defendant Oconee Timber, Inc. (Oconee). Oconee's insurer was appellant-defendant Georgia Casualty & Surety Company (Georgia Casualty).

Appellees subsequently instituted the instant action in Greene County against all three appellants. Venue in Greene County was predicated upon the provisions of OCGA § 46-7-62 (b) (Code Ann. § 68-514) relating to motor contract carriers: "Except in those cases where the Constitution of Georgia requires otherwise, any action against any resident or nonresident motor carrier for damages . . . may be brought in the county where the cause of action or some part thereof arose . . ." Georgia Casualty was joined in the Greene County suit pursuant to the provisions of OCGA § 46-7-58 (e) (Code Ann. § 68-509): "It shall be permissible under this article for any person having a cause of action arising under this article in tort or contract to join in the same action the motor carrier and its surety, in the event a bond is given. If a policy of indemnity insurance is given in lieu of bond, it shall be permissible to join the motor carrier and the

insurance carrier in the same action, whether arising in tort or contract."

The answer filed by appellant-Ash was subsequently stricken and he was adjudged in default as to the issue of liability to appellees, leaving for resolution as to him only the issue of damages. With regard to appellants Oconee and Georgia Casualty, however, the issue of liability, as well as that of damages, was submitted to the jury. A verdict for both appellees and against all three appellants was returned. Judgment was entered on the verdicts and appellants' motion for judgment n.o.v. was denied. Appellants appeal.

1. In related enumerations of error, appellants Oconee and Georgia Casualty assert that the trial court erred in refusing to grant their respective motions for directed verdict. The argument in this regard is that the evidence failed to demonstrate that Oconee was a "motor contract carrier" subject to suit in Greene County pursuant to OCGA § 46-7-62 (b) (Code Ann. § 68-514) and, accordingly, also failed to demonstrate that Georgia Casualty was the insurer of such a carrier subject to the joinder provisions of OCGA § 46-7-58 (e) (Code Ann. § 68-509).

OCGA § 46-1-1 (8) (Code Ann. § 18-101) provides the general definition of "motor contract carrier" as "every person, except common carriers, owning, controlling, operating, or managing any motor propelled vehicle including the lessees or trustees of such persons or receivers appointed by any court used in the business of transporting persons or property for hire over any public highway in this state and not operated exclusively within the corporate limits of any city." However, subparagraph (C) of paragraph 8 of that code section specifically provides that the definition of "motor contract carrier" shall *not* include "[m]otor vehicles engaged exclusively in the transportation of agricultural . . . products . . . between farm, market, gin, warehouse, or mill, where the weight of the load does not exceed 18,850 pounds, whether such motor vehicle is owned by the owner or producer of such agricultural . . . products or not, so long as the title remains in the producer . . . [T]he term 'agricultural products' includes . . . wood, lumber, . . . timber or logs being hauled by the owner thereof or his agents or employees between forest and mill or primary place of manufacture." Thus, those who would *otherwise* be "motor contract carriers" under the general provision of OCGA § 46-1-1 (8) (Code Ann. § 18-101) are exempt from that status by virtue of subparagraph (C). See generally *Aero Mayflower Transit Co. v. Ga. Public Svc. Comm.*, 179 Ga. 431 (176 SE 487) (1934), aff'd 295 U. S. 285 (55 SC 709, 79 LE 1439) (1935). The statute accomplishes this exemption for certain carriers by narrowly defining the types of goods that will qualify the carrier's motor vehicles for the exemption.

"There are several bases of distinction which may apply to agricultural . . . products, as distinguished from other products and commodities offered for transportation . . . [A]n exemption of carriers of such products is to be taken as an exemption of the products themselves, and not of the carrier." *Nance v. Harrison,* 176 Ga. 674, 682 (169 SE 22) (1932). "This is a reasonable classification in favor of the producer, which will enable movement of the products over the highways so long as title remains in him without exaction of the prescribed fee." *Aero Mayflower Transit Co. v. Ga. Public Svc. Comm.,* supra at 442.

As noted above, the statutory exemption of OCGA § 46-1-1 (8) (C) (Code Ann. § 18-101) presupposes that the carrier would otherwise be a "motor contract carrier" within the general definition of OCGA § 46-1-1 (8) (Code Ann. § 18-101) and appellants do not assert that the evidence would not authorize a finding that, as to the pulpwood truck, Oconee was a "motor contract carrier" within that general definition. What Oconee and Georgia Casualty do assert is that it was error to deny their motions for directed verdict because the pulpwood truck which collided with appellees' automobile comes within the above-stated statutory exclusion from the general definition of "motor contract carrier." Although the actual capacity of the truck to carry pulpwood exceeded the statutory 18,850 pound minimum, appellants' argument is that at the time of the actual collision, the truck was unloaded and that, therefore, the exclusion of OCGA § 46-1-1 (8) (C) (Code Ann. § 18-101) is applicable.

With regard to the exemption from the general definition of "motor contract carrier," the burden of proof was on appellants to show that the pulpwood truck came within its terms and there was no burden on appellees to prove that the truck was not within the exemption. See *Seaboard C.L.R. Co. v. Freight Delivery Svc.,* 133 Ga. App. 92, 96 (210 SE2d 42) (1974). The issue thus becomes whether this burden was met by a mere showing that the pulpwood truck was unloaded at the time of the collision.

"The statute under review is a revenue or tax-raising measure." *Nance v. Harrison,* supra at 677. As such, OCGA § 46-1-1 (8) (Code Ann. § 18-101) is subject to certain rules of statutory construction. With specific reference to OCGA § 46-1-1 (8) (C) (Code Ann. § 18-101), the following is applicable: "Exemptions from taxation are to be strictly construed against the taxpayer . . ." *Fulton County Fed. Savings &c. Assn. v. Simmons,* 210 Ga. 621, 624 (82 SE2d 16) (1954). See also *Ga. R. Bank &c. Co. v. Richmond County Bd. of Tax Assessors,* 142 Ga. App. 417, 419 (236 SE2d 95) (1977). The exempting statute speaks in narrow and specific terms of motor vehicles engaged "exclusively" in the transportation of: (1)

agricultural products; (2) the weight of the load of which products must not exceed 18,850 pounds; and (3) the title to which products must remain in the producer. "Exclusively" means "[a]part from all others." Black's Law Dictionary, p. 674 (4th ed. 1951). Cf. *Alexander Film Co. v. Brittain,* 63 Ga. App. 384, 387 (4) (11 SE2d 66) (1940). Accordingly, if at any time up to and including the time of the collision with appellees, any of the requirements for the exemption had not been met as to the pulpwood truck, that motor vehicle would not have been engaged "exclusively" in the transportation of exempted products and would not qualify Oconee for the exemption from "motor contract carrier" status stated in OCGA § 46-1-1 (8) (C) (Code Ann. § 18-101). There was no evidence in this case that, prior to the collision, Oconee's unloaded truck, which had a capacity exceeding 18,850 pounds, was engaged exclusively in the transportation of under-capacity loads of agricultural products not exceeding the statutory maximum weight so as to be otherwise exempt from the general definition of "motor contract carrier." Accordingly, Oconee and Georgia Casualty did not meet their burden of showing exemption under OCGA § 46-1-1 (8) (C) (Code Ann. § 18-101) and the trial court did not err in refusing to grant their motions for directed verdict on this ground. *Seaboard C.L.R. Co. v. Freight Delivery Svc.,* supra at 96.

2. Over the objection of appellants Oconee and Georgia Casualty, the policy of insurance covering the pulpwood truck — with the policy limits expunged — was admitted into evidence. Appellants assert on appeal that the admission of the policy was error. In addition, at the close of the evidence appellant-Ash moved for a mistrial based upon the admission of the policy. The denial of Ash's motion in this regard is also enumerated as error. Essentially, the argument advanced by all appellants is that the policy was admitted solely because appellees were proceeding on a "motor contract carrier" theory but appellees failed to prove Oconee's requisite status as such a carrier and Georgia Casualty's concomitant status as the insurer of such a carrier. Therefore, according to appellants, since the rationale underlying the admission of the policy was erroneous, the policy had only prejudicial rather than relevant value.

For the reasons discussed in Division 1 of this opinion, the evidence authorized a finding that Oconee was a "motor contract carrier" and did not come within the exclusion contained in OCGA § 46-1-1 (8) (C) (Code Ann. § 18-101). If Oconee was a "motor contract carrier" within the general definition of OCGA § 46-1-1 (8) (Code Ann. § 18-101) and was not shown to be exempt from that status under subsection (C) of that statute, Georgia Casualty was an insurer of such a carrier. Under these circumstances, the policy would be

admissible so long as the limits of coverage were not revealed to the jury. See *Carolina Cas. Ins. Co. v. Davalos,* 246 Ga. 746 (272 SE2d 702) (1980) (construing OCGA § 46-7-12 (Code Ann. § 68-612)). Accordingly, under the facts of this case, the policy was properly admitted. Compare *Sweat v. Burke,* 156 Ga. App. 637 (276 SE2d 51) (1980).

3. Appellants assert in several enumerations that the trial court erroneously curtailed their counsel's right to present an effective closing argument with regard to the applicable legal definition of "motor contract carrier." "In civil cases, questions of law are to be argued exclusively to the court. [Cits.] Counsel, in closing argument, is not permitted to read law from the Code or from appellate court decisions. [Cits.] This does not mean, however, that counsel is not permitted to refer to applicable law in arguing his facts to the jury. It is counsel's right to state his legal position to the jury; this right is indispensable to an intelligent presentation of his case. [Cits.]" *Garrison v. Rich's,* 154 Ga. App. 663, 664 (269 SE2d 513) (1980). After a review of the transcript of the closing argument, we are unable to say that appellants' counsel was erroneously denied his right to refer to such law as was applicable and relevant to appellants' case. Accordingly, we find no reversible error.

4. Previous to instituting the instant action, appellees had filed and dismissed an action against appellants Oconee and Ash, seeking to recover the damages they allegedly sustained in the collision. In the instant case, appellants unsuccessfully sought to introduce evidence concerning the ad damnum clause of appellees' original complaint in the dismissed action. The stated purpose of introducing such evidence was to show that the damages being sought in the instant action, in which appellant-Georgia Casualty was also a defendant, were significantly greater than those which had been sought in the dismissed suit. The refusal to admit such evidence is enumerated as error.

"Admissions of fact in the pleadings can always be taken advantage of by the opposite party, and can be used as evidence even though the pleadings should be stricken or withdrawn [cits.] ... This rule, however, has application to admissions of fact, and is not applicable where the admission is merely the opinion on the part of the party making it ..." *Clift & Goodrich v. Mincey Mfg. Co.,* 41 Ga. App. 38 (1) (152 SE 136) (1929). "An admission in judicio applies only to the admission of fact and does not apply where the admission is merely the opinion or conclusion of the pleader as to law or fact. Thus, allegations which are conclusory, or which assert mere opinions of the pleader are not admissions in judicio." Green, Ga. Law of Evidence (2d ed.), § 238, p. 394. With regard to the ad damnum clause of

appellees' complaint in the original dismissed action, "[t]heir allegations concerning this matter did not amount to an assertion of any fact, but stated merely a conclusion deducible from the facts alleged." *Huger v. Cunningham,* 126 Ga. 684, 690 (56 SE 64) (1906). Accordingly, we find that the ad damnum clause of appellees' original complaint was merely their opinion or conclusion regarding the damages they had suffered as the result of the collision and was not an admission of fact which would be admissible against them for any purpose in the instant action. There was no error in excluding the evidence.

5. On direct examination, a hypothetical was propounded to the physician treating appellee-Mrs. Jernigan, at the conclusion of which he was asked: "[A]ssuming these facts to be true have you an opinion based on reasonable medical certainties as to whether or not there *could be* a causal connection between the collision described and the woman's injury as set forth in this question?" (Emphasis supplied.) The physician was allowed to answer this question over several objections raised by appellants. On appeal, error is assigned upon the trial court's overruling of the objections to the question.

It is first urged that the physician should not have been allowed to give his opinion that there "could be" a causal connection between the facts as set forth in the hypothetical and appellee-Mrs. Jernigan's physical injuries. Appellants contend that the physician should have been permitted to testify only as to the probability rather than the mere possibility of the requisite causal relationship.

Although standing alone, medical testimony as to the mere possibility of a causal relation between a given event and the subsequent physical or mental condition of an injured person will not establish the causal relationship, it is clear that such testimony is not inadmissible as to that issue. See *Nat. Dairy Prods. Corp. v. Durham,* 115 Ga. App. 420 (154 SE2d 752) (1967). As the *Nat. Dairy Prods. Corp.* case points out, the real question is whether the evidence in a case is sufficient to authorize a finding of the requisite causal relationship. " 'There are a number of cases which, while apparently admitting that medical evidence showing only a possibility of a causal relation between an accident or injury and subsequent death or physical or mental impairment is not, by itself, sufficient to establish such relation, uphold the view that *such evidence, in conjunction with other evidence, non-expert in nature,* indicating that such a relation exists, although likewise not sufficient by itself to establish the relation, or in conjunction with admitted or obvious facts and circumstances of the case showing that death or physical disability would naturally and probably result from the injury, is sufficient to establish the causal relation.' [Cits.]"

(Emphasis supplied.) *Nat. Dairy Prods. Corp. v. Durham,* supra at 423. Our review of the instant case demonstrates that it does not involve an issue of causation "which, by the nature of the situation, could be resolved solely by expert medical evidence standing alone, in which [case] the evidence must naturally be based at least on reasonable probability." *Nat. Dairy Prods. Corp. v. Durham,* supra at 422-423. The evidence in the instant case, medical as well as non-expert, authorized a finding of a casual connection between the collision and appellee-Mrs. Jernigan's physical injuries. Her physician's testimony was not erroneously admitted as to this issue over the objection that such testimony was speculative.

Appellants also objected to the physician's response to the hypothetical question on the basis that, as propounded, the question assumed facts not in evidence. Over this objection, the trial court permitted the physician to answer the question upon agreement from appellees' counsel that he would "tie it up with further testimony" and that appellants' counsel could renew his objection "at a later time." At the close of appellees' evidence, appellants' renewed objection to the testimony was also overruled. This ruling is enumerated as error.

Our review of the transcript demonstrates that the facts underlying the hypothetical question propounded to the physician were in evidence, either before the question was asked or, pursuant to the trial court's provisional ruling of admissibility, thereafter. Accordingly, there was no error in this regard.

6. Appellees further assert that it was error to refuse to strike the entirety of the testimony of appellee-Mrs. Jernigan's physician on the ground that his testimony established merely the possibility, not the probability, that her physical injuries were the result of the collision. As discussed in Division 5 of this opinion, the physician's testimony was not inadmissible as against this objection. His expert testimony, in conjunction with other non-expert evidence, authorized a finding of the requisite causal connection between the collision and the injuries sustained by appellee-Mrs. Jernigan. It was not error to refuse to strike the physician's testimony in its entirety.

7. Appellants assert that the verdict for appellee-Mr. Jernigan as to property damage to his automobile sustained in the collision is outside the range authorized by the evidence. As against this contention, our review of the transcript reveals no reversible error in the entry of judgment on the verdict returned for appellee-Mr. Jernigan's property damages. See generally *Piedmont Builders v. Fullerton,* 157 Ga. App. 126 (276 SE2d 277) (1981).

8. It was not error to deny appellants' alternative motions for judgment n.o.v. or new trial.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED MAY 12, 1983 —
REHEARING DENIED JUNE 14, 1983 — 

*David R. Montgomery,* for appellants.
*David G. Kopp,* for appellees.