[No. 35461-6-II.   Division Two.   January 15, 2008.]

CASCADE FLORAL PRODUCTS, INC., ET AL., *Respondents*, v. THE
DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

*Robert M. McKenna, Attorney General,* and *Diana S. Cartwright, Assistant,* for appellant.

*Philip A. Talmadge* (of *Talmadge Law Group, PLLC*), for respondents.

¶1 HUNT, J. — The Department of Labor and Industries (L&I) appeals the trial court's summary judgment order declaring that Washington's farm labor contractors act[1] (Act) does not apply to the brush picking industry, including Cascade Floral Products and other forest greenery packinghouses. L&I argues that the trial court erred in its ruling because brush picking workers are engaged in "forestation or reforestation" within the meaning of the Act. Holding that the packinghouse owners are not "agricultural employers" under the Act and that brush picking is not a "forestation or reforestation" or related activity, we affirm.

## FACTS

### I. BACKGROUND

¶2 The specialized forest products industry engages in the gathering and picking of naturally occurring products in forests, such as evergreen foliage, salal, moss, and cascara bark, which the industry uses for floral displays and other decorative purposes. RCW 76.48.020(18). Owners of packinghouses, called "sheds," lease land from property owners such as the United States Forest Service or large timber companies. The packinghouses then (1) sell permits[2] to individual brush pickers to gather the greenery from the

---

[1] Ch. 19.30 RCW.

[2] The specialized forest products act, RCW 76.48.030, requires permits to transport or to possess specialized forest products.

leased tract of land, (2) buy these greens from the brush pickers, and (3) act as vendors to greenery wholesalers and distributors.

¶3 In 2003, L&I sent several packinghouses (Companies)[3] information about the Act, chapter 19.30 RCW, including checklists to ensure compliance with the Act.

## II. DECLARATORY JUDGMENT

¶4 The Companies filed an action for declaratory judgment. They asked the Mason County Superior Court to declare that they were not "agricultural employers" within the meaning of the Act and, thus, it did not apply to them. Moving for summary judgment, the Companies argued that brush picking is not an "agricultural activity," nor does it qualify as "forestation or reforestation" under the Act. L&I responded that the Act broadly defines "agricultural employer" and that including the brush picking industry would best effectuate the Act's purpose.

¶5 The trial court ruled that the statute was unambiguous and that the phrase "and other related activities" referred back to the Act's specific terms "forestation or reforestation." Ruling that the statute did not include "other related forestry practices," the trial court concluded that brush picking was simply too different from forestation and reforestation for inclusion in the Act. The trial court granted the Companies' motion for summary judgment.

¶6 L&I appeals.

## ANALYSIS

¶7 L&I argues that the trial court erred in ruling that the Act does not apply to the forest-greenery packing

---

[3] Respondent Companies include: Cascade Floral Products, Inc.; Continental Wholesale Florists, Inc.; Continental Floral Greens; Hiawatha, Inc.; Hood Canal Evergreens; Pacific Coast Evergreens, Inc.; Puget Sound Evergreens, Inc.; Mt. St. Helens Evergreen, Inc.; and Olympic Evergreen, Inc. The Companies are all major packinghouses in the specialized forest products industry.

industry and Companies. L&I asserts that the statutory language is intentionally broad and that including brush pickers would conform to the Act's purpose.[4] The Companies respond that the trial court properly found that the brush pickers and packinghouses are not engaged in "forestation or reforestation" within the meaning of the Act and, consequently, the Act does not apply to them. We agree with the Companies and with the trial court.

## I. STANDARD OF REVIEW

¶8 We review a summary judgment de novo. CR 56(c). We perform the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004) (citing *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993)). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When reviewing a summary judgment, we view all facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005) (citing *Atherton Condo. Apartment Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990)).

## II. PLAIN MEANING OF THE ACT

¶9 The Act requires "agricultural employers" to provide certain protections for contract agricultural workers, such as obtaining insurance for the workers' transportation. The Act defines an "agricultural employer" as

> any person engaged in agricultural activity, including the growing, producing, or harvesting of farm or nursery products,

---

[4] L&I also asserts that it is entitled to judicial deference because it has the authority to enforce and to administer farm labor contracting and employment laws. Nonetheless, Washington courts effectuate an unambiguous statute's plain meaning, even if an administrative agency disagrees with the interpretation. *Smith v. N. Pac. Ry.*, 7 Wn.2d 652, 664, 110 P.2d 851 (1941) (citing *State ex rel. Leach v. Fishback*, 79 Wash. 290, 140 P. 387 (1914)); *Wash. Fed'n of State Employees v. State Pers. Bd.*, 54 Wn. App. 305, 309, 773 P.2d 421 (1989).

or engaged in the forestation or reforestation of lands, which includes but is not limited to the planting, transplanting, tubing, precommercial thinning, and thinning of trees and seedlings, the clearing, piling, and disposal of brush and slash, the harvest of Christmas trees, and other related activities.

RCW 19.30.010(4).

¶10 L&I concedes that brush picking is not an "agricultural activity." Nonetheless, it argues that we should read the "forestation" language of the Act broadly and inclusively to effectuate the Act's purpose, namely, the protection of vulnerable workers. The Companies counter that the plain meaning of the Act's statutory language evinces the legislature's intent that the Act apply only to actions involving cultivation, not to the gathering of naturally occurring greens for the brush picking industry. We agree with the Companies that the plain language of the Act controls and, therefore, statutory interpretation, as L&I requested, is unnecessary.

## A. Standard of Review

¶11 Because interpretation of statutes and court rules are questions of law, our review is de novo. *Nevers v. Fireside, Inc.*, 133 Wn.2d 804, 809, 947 P.2d 721 (1997) (citing *Westberg v. All-Purpose Structures, Inc.*, 86 Wn. App. 405, 409, 936 P.2d 1175 (1997)). Where statutory language is plain and unambiguous, we derive meaning from the wording of the statute itself. *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991). A statute that is clear on its face is not subject to judicial interpretation. *In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993).

## B. Unambiguous Statute

¶12 A statute is ambiguous if it is " 'susceptible to two or more reasonable interpretations,' " but the possibility of different meanings alone does not render a statute

vague. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006) (internal quotation marks omitted) (quoting *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005)). The Washington Supreme Court recently held it was error for an appellate court to engage in statutory interpretation without first determining if the language was ambiguous. *Cerrillo*, 158 Wn.2d at 202. The court held the finding of ambiguity was a threshold issue because the judiciary should not subject a clear statute to interpretation.[5] *Cerrillo*, 158 Wn.2d at 201 (quoting *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002)).

¶13 Here, when read in its entirety, the Act's definition of "forestation or reforestation" is unambiguous in that the agricultural activity in question must involve cultivation or commercial planting.[6] L&I's claim—that the

---

[5] Neither party argues that we should use the ejusdem generis doctrine to interpret the Act. Nevertheless, if we did so we believe this doctrine would support our reading of the Act's plain language.

The doctrine of ejusdem generis provides that where general terms follow specific words, a court should give "meaning and effect only to the extent that the general terms suggest similar items to those designated by the specific terms." *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 882, 154 P.3d 891 (2007) (citing *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 970, 977 P.2d 554 (1999)). Courts should construe general words followed by specific terms as encompassing "only similar objects." *Sw. Wash. Chapter, Nat'l. Elec. Contractors Ass'n v. Pierce County*, 100 Wn.2d 109, 116, 667 P.2d 1092 (1983); *King County Water Dist. No. 68 v. Tax Comm'n*, 58 Wn.2d 282, 286, 362 P.2d 244 (1961). The ejusdem generis rule applies where lists of both general and specific terms are clearly associated in a sentence. *Sw. Wash. Chapter, Nat'l. Elec. Contractors Ass'n*, 100 Wn.2d at 116-17.

Here, the language in the Act lists the generalized terms of "forestation or reforestation," followed by a list of specific activities. RCW 19.30.010(4). Thus, a party such as L&I, which asserts that the legislature intended to include an activity in the Act, must show that the specific alleged activity has a sufficient relationship to the specific terms included. We fail to see how L&I could sustain this burden were we to engage in statutory interpretation.

[6] We further note that the legislature has passed other statutes excluding brush picking from the statutory definition of "agriculture." For example the Washington Industrial Safety and Health Act of 1973, RCW 49.17.022, intends that "activities performed by a farmer as incident to or in conjunction with his or her farming activities [should] be regulated as agricultural activities"; Washington's wage and hour laws exempt agricultural employment, defining it as "[a]ny individual employed . . . on a farm . . . in connection with the cultivation of the soil, or in connection with raising or harvesting any agricultural or horticultural commodity," RCW 49.46.130(2)(g); the workers' compensation definition of "specialized

legislature intended the phrase "not limited to" to broaden the statute's coverage—fails because the phrase "not limited to" relates back to "forestation or reforestation."[7]

¶14 Furthermore, the issue here is whether "brush picking" is an "other activity" related to "forestation or reforestation." *Webster's* defines "forestry" as "[t]he art and science of cultivating, maintaining, and developing forests." WEBSTER'S NEW COLLEGE DICTIONARY 23, 439 (2d ed. 1999). *Webster's* definition of "forestry" is consistent with (1) the Act's definition of "forestation or reforestation" as an agricultural activity involving cultivation or commercial planting and (2) the Act's listed activities following "forestation or reforestation," all of which involve cultivation or planting of some kind.[8] The Act's focus on cultivation and planting and the harvesting of such cultivated crops is in stark contrast to a brush worker's gathering of naturally occurring greenery.[9]

---

forest products" in the WACs carries a "Special Note" providing that "[t]he farm labor contractor provision . . . is not applicable to this classification as such establishments are not engaged in a farming operation." Former WAC 296-17-643 (2000).

[7] Nevertheless, L&I argues that these terms are ambiguous and, therefore, we should construe these ambiguities in favor of including brush pickers because it would best effectuate legislative intent and the statute's purpose to protect vulnerable workers. Having found no ambiguities to construe, we do not further consider this argument.

[8] Also, an exemption from nuisance laws in Washington's right-to-farm act defines "agricultural activities" as "occur(ing) on a farm," and defines "[f]orest practice[s]," importing the language from RCW 76.09.020, which specifically states that " '[f]orest practice' shall not include . . . removal or harvesting of incidental vegetation from forest lands such as . . . ferns [and] greenery." RCW 76.09.020(11).

[9] In a 2003 action between the same parties, the Companies obtained an unchallenged declaratory judgment affirming that its brush pickers are independent contractors, not the packinghouses' employees, for industrial insurance purposes under Title 51 RCW. The trial court found that the packinghouses were merely buyers and sellers of floral greens, not the brush pickers' employers. For example, although most brush pickers sell back to the packinghouse that issued their workers' permits, there does not appear to be an industry requirement to do so.

Moreover, the packinghouses do not control when the brush pickers work; nor do the packinghouses transport these workers. The Companies designate the location of harvest only to the extent that the brush pickers must gather from their respective leased lands. Accordingly, the trial court found the Companies' degree

¶15 In spite of L&I's strong urging, we cannot hold that the Act applies to brush picking on the ground that, in promulgating the Act, the legislature did not adequately express its intent to reach the specialized forest products industry.[10] On the contrary, our Supreme Court has held that courts must read an unambiguous statute for its plain meaning, " 'even if it believes the Legislature intended something else but did not adequately express it.' "[11] *Cerrillo*, 158 Wn.2d at 201 (quoting *Kilian*, 147 Wn.2d at 20). Moreover, we presume that the legislature "considered its prior enactments when enacting new legislation" and that it was aware of its own statutory definition of the "specialized forest products" industry[12] when it amended the Act. *Savlesky v. Wash. Sch. for the Deaf*, 139 Wn. App. 245, 253, 136 P.3d 152 (2006) (citing *State v. Roth*, 78 Wn.2d 711, 715, 479 P.2d 55 (1971)).

¶16 Accordingly, we hold that "brush picking" is not an "other related activity" within the meaning of the Act. The legislature's alleged "failure" to extend the Act's coverage to specialized forest products industry workers does not support L&I's argument.[13] Furthermore, the courts may not read in a provision that the legislature has allegedly failed to express sufficiently; thus, we may not judicially add

of control over the brush pickers insufficient to constitute an employer-employee relationship.

[10] Nor does L&I's claim that brush picking has a "sufficient relationship" to the Act's other listed activities justify judicial expansion of legislative intent.

[11] More specifically, courts must interpret statutes as written "and [may] not add or move language, even if we believe the legislature intended a different result." *Cerrillo*, 158 Wn.2d at 204 (citing *Kilian*, 147 Wn.2d at 20).

[12] When it amended the Act in 1985 to include "forestation or reforestation" as agricultural activities under RCW 19.30.010(4), our state legislature had already' enacted the specialized forest products act in 1967. Ch. 76.48 RCW. This specialized forest products act contained language stating that " '[s]pecialized forest products' means Christmas trees, native ornamental trees and shrubs, cut or picked evergreen foliage, cedar products, cedar salvage, processed cedar products, specialty wood, wild edible mushrooms, and Cascara bark." RCW 76.48.020(18).

[13] Furthermore, although legislative history shows that the legislature intended the Act to protect exploited agricultural workers, contrary to L&I's assertions, there is no evidence that the legislature meant to extend such coverage to workers in the specialized forest products industry.

brush pickers and packinghouses to the Act's coverage. The legislature, not the Court of Appeals, is the proper body to make such an addition if it so chooses.

### III. ATTORNEY FEES

¶17 The Companies request attorney fees on appeal. They argue that L&I's prelitigation conduct and its appeal were in bad faith. L&I counters that we should not consider this request because (1) the Companies failed to raise the issue of attorney fees in the superior court and (2) the Companies improperly base their allegation of bad faith on events that took place before trial. Finding no basis on which to grant attorney fees, we deny the Companies' request.

¶18 We affirm.

BRIDGEWATER and PENOYAR, JJ., concur.