The opinion of the Court was delivered by
iNGLis, A. J.
In the “ Act to raise supplies,” of December 21st, 1866, (18 Stat. S. C. 396,) there is imposed as part of a general “ tax on incomes,” a tax of one dollar on every hundred dollars of the " gross incomes of all railroads not exempted by law.” The three companies severally re-lators in the cases before the Court, claim that they are by the terms of their respective charters “ exempted by law,” within the meaning of the exception, and are therefore not subjected to this tax. In the original charter of the-South Carolinia Eailroad Company “ it is stipulated ” that during the first period “ of thirty-six years, the stock of the company, and the real estate that may be purchased by them, and connected with and subservient to the works herein authorized, shall be exempted from taxation.” (A. A. 1828, Sec. 14, 8 Stat. S. C. 861.) The "first period of thirty-six years,” which was “ to be computed from the time when the said railroad should be completed for transportation,” (1833,) has not yet expired. In the 43d section of the Act of 1835, (8 Stat. S. C. 417,) creating the “ Cincinnati and Charleston Eailroad Company,” which is supposed to have been by subsequent legislation (A. A. 1843, 11 *184 Stat S. C. 278) incorporated into tbe charter of tbe South Carolina Railroad Company, fuller and more specific terms of exemption are used. As, however, this latter Act does not seem to the Court materially to enlarge the exemption prom-mised in the original charter, it will not be necessary to advert more particularly to this difference of phraseology, or to consider the precise effect of this subsequent legislation. In the charter of the Greenville and Columbia Railroad Company (A. A. 1845, Sec. 16,11 Stat S. C. 829) there is a similar exemption of that company “ during the term of thirty-six years from the time of its corporate existence,” in language almost identical with that used in the original charter of the South Carolina Railroad Company. The North Eastern Railroad Company was incorporated in 1851, (12 Stat. S. C. 129,) “ for the term of fifty years,” and by a subsequent amendment of its charter (A. A. 1855, Sec. 1, 12 Stat. S. C. 407) “ the stock ” of the company, and the real estate that it then owned, or should afterwards acquire, connected with, or subservient to the works authorized in the charter, were exempted from all taxation during the con-continuance of the charter. “The stock" of each of these companies and its real estate, employed in, or subservient to its chartered enterprise, are thus, in express terms, exempted from taxation. Is the gross income of its railroad exempt ?
On the part of the relators, it has been argued, that the General. Assembly intended not to impose this tax upon any company which by any existing law was then at all exempted from taxation, though not in terms or in effect from this particular form of tax, and thus to grant all such already favored companies a new and additional exemption, “not exempted by law,” in the parenthesis is, it is said, a predicate not of “ incomes,” but of railroads. This may be conceded, an'd still the inquiry “ exempted by law ” from what? remains to be answered, and the only proper *185 answer is — “from this particular form of tax now imposed upon railroads.” Distinctions of this kind are odious and unjust, unless founded upon considerations of public benefit, and there can be no such reasons for thus discriminating in favor of railroads already completed and in operation; the fact that in the past legislation these companies had been privileged beyond others, instead of a justification, would be an aggravation of the present favoritism. Grants of exemption from a common burden of public charge are to be strictly construed. “Every exemption must be Couched in such plain and unambiguous language as to satisfy the Court beyond doubt that the Legislature intended to create the exemption. Such a right can never arise by mere implication, and all laws granting the exemption are to be most strictly construed.” (Blackwell, Tax titles, 408-10; Dwarris Stat. 648.) To adopt the interpretation of the expression “ not exempted by law,” which is thus asked, by adding, in order to the completion of its meaning, “ from taxation,” instead of “ from this kind of tax,” would surely be a wide departure from this wholesome rule. The true inquiry here is, whether by any past legislative grant of exemption, the General Assembly was precluded from the imposition of this form of tax. The purpose was, not to show favor, but to keep faith, and to exempt from the imposition of this tax those companies, and those alone, upon which the State had, for adequate considerations, engaged not to impose it. The right of each of these relators to exemption from this particular tax, if it exist, must, therefore, be derived from the grant contained in its charter.
The “stock” of a railroad company is the aggregate of the property and effects of the company, which as a principal or capital fund is employed in, or made subservient to the prosecution of the specific business for which the company was chartered. In its original form, it is the sum of the moneys, contributed in fixed proportions, for the pur *186 poses of the adventure, by the persons willing to take part in it, but, by speedy conversion, it becomes the lands, rights of way, roadbed, track, depots, workshops, machinery, engines, carriages, &c., acquired, or constructed by or for the com.pany, and the franchises derived from the Legislative grant. The individual contributories are denominated “ stockholders.” They are holders of the “stock” in shares proportionate to their several contributions; but they are not in ¡law owners, either jointly of the whole, or severally of distinct parts of the property and effects which thus constitute .the stock of the company. They cannot, as individuals, dispose of it or any part of it, by sale, gift or otherwise, nor can it, at common law, be taken in execution for their separate personal debts. The legal title to the whole is in the body, not as a firm of partners, nor as an association of part owners, but in its corporate capacity, as an artificial being. It holds this legal title, however, upon the trust to employ the stock — the visible property, funds and franchises, in carrying on the chartered business, only for the .use and benefit of the individual stockholders, and to distribute to these, in shares proportioned to their several interests, from time to time, during the continuance of the corporate existence, the profits arising from such employment, and, at the dissolution of the corporation by the expiration of the charter, or otherwise, the proceeds of any residue of the corporate property, funds and effects, which shall then be on hand. The right to his just share in this distribution is the exact interest or property which the individual stockholder has — a right in the nature of a chose ■in action, to be enforced, if denied or withheld, by suit — an equity like the interest of an ordinary cestui yne trust. It is in consequence cf this identity of the “stock,” whether regarded as an aggregate vested in the corporation as a •legal estate, or as shares vested in the individual corpora-tors as equitable interests, that “ in the absence of any exemp *187 tion, while tbe capital stock of a corporation may, in tbe discretion of tbe Legislature, be taxed as an aggregate to tbe corporation, according to its value, or to the stockholders, on account of their separate ownership of it, it cannot be taxed at the same time in both modes,” for this would be double taxation. (Aug. & Ames on Corp. Sec. 461, et seq.) And hence also, it necessarily results that a general exemption of a corporation from taxation operates to exempt the shares of its stock in the hands of the individual corpor-ators, as their several property, from taxation theieon. “ The aggregate could not be taxed without its having the same effect upon the parts, that a tax upon the parts would have upon the whole.” (Gordon vs. Ann. Tax Court, 3 How. S. C. R. 133; and see Gordon vs. Mayor, &c., of Baltimore, 5 Grill, 231.)
In The King vs. Vndewall, (2 Burr. 991,) it was held, that when land was taxed in the bands of the occupiers, the quit rents and other profits derived therefrom in the hands of tbe landlord could not be taxed ; and in The King vs. Church Wardens, &c., of Alberbury, Sc., (1 East. 534,) when this case was cited, Lord Kenyon said, “ The case of quit-rents goes on the objection of double-rating the same property in -the hands of the landlord as well as of the tenant.” “Landlords who derive a certain profit upon it in the nature of rent could not have been rated, because that would be to rate the subject matter twice.” The “income” of a railroad is, at least, as closely indentified with its “ stock,” as the rent with the land out of which it issues. Such income is the produce of the'stock, the money earned by the employment of the corporeal property and funds of the company in the exercise of its franchises; and therefore, when the shares of corporate stock, in the hands of individual holders, are taxed, eo nomine, the corporation itself is not liable to be taxed for personal estate or for *188 “ income.” (Aug. & Ames on Corp., sec. 460; Boston Water Co. vs. City of Boston, 9 Metc. 199.)
To impose taxes upon the company in respect of its “stock,” and also in respect of its “income,” at the same time, though not more really, is yet certainly more manifestly a “ double taxation,” or “ twice taxing the same subject matter.” In other words, taxing the “income” of the stock is only another mode of taxing the “stock” itself; and hence an exemption of the “stock” in terms from taxation would be nugatory, if the income was not thereby equally exempt. If the income can be taxed, the stock is not exempt. In The State ex rel. Sebring et al. vs. The City Council of Charleston, (5 Rich. 561,) the Court of Errors'of this State decided that, where by the terms of a bank charter “the corporation and the stock thereof is relieved from the payment of all taxes during the time for which it is incorporated,” a tax could not be imposed on the dividends received by the stockholders on the shares of stock held by 'them severally. The argument by which this conclusion is reached derives all its force from the fact, that the “ stock ” is exempted. The two relators were holders of stock in different banks, in the charter of one of which there is an express exemption of the “ stock ” eo nomine, but in the other only the corporation is relieved from all taxes. And the conclusion attained is made to embrace both cases expressly on the ground, that however different the language in the various bank charters in this particular, “the design was and the effect has been to put each on the same footing.”
A corporation is an artificial being, the creature of positive law, wholly disliuct from the natural persons composing it, its identity being unaffected by changes, however extensive and frequent, of these. An exemption of the corporation, considered as a person merely, cannot necessarily involve an exemption of the individual corporators as per *189 sons. But an exemption of a corporation as such, as of a natural person, from all taxation, must be understood to exempt not merely the person, but' also all the property of the corporation, as bad been previously held in T.he State Bank et al vs. The City Council. &c., (3 Rich. 342;) and the legal effect was the same, therefore, as if “ stock ” had been expressly named in the exemption of each charter. “ Relief of the bank from all taxation,” says the Court, “ includes property of the bank; relief of the citizen from all taxation includes the property owned by him; each as incidents. If this be so of persons, natural or artificial, the principle must equally apply to things.”
But if the “dividends” on the “stock ” which are at least only the net “income” or profits thereof distributed among the individual corporators according to their respective interests, are, after they have come into the hands of the stockholders and thereby ceased to be property of the corporation, exempted from taxation, by an exemption therefrom of the “ stock,” how much more surely exempted thereby must be the “gross income” — the entire earnings of the “ stock,” while still the property and in the hands of the corporation itself, and then chargeable with the current expenses of the business, for defraying which it is in itself possibly insufficient and would be rendered more probably so by this additional expense of the tax. This is assumed, as if beyond controversy, in the argument of the Court in Sebring's case, (ubi supra) “ If the citizen be relieved from the payment of taxes on a house and lot, by no fair-construction could the rent he might derive be the subject-of taxation.” " If the citizen intending to invest his private capital in bonds at interest, should secure relief from' taxation thereon, by no just interpretation could he be deprived of the profits of his investment by a tax on the interest accruing from year to year.” “ Profits on stock remaining in the bank are not taxable, though segregated they *190 may be from other funds. In what lies the difference, when transferred to the individual stockholder and when held by the stockholders jointly, is not easily perceived.”
But what was the purpose of these exemptions? Although it has been elsewhere gravely denied, it would yet seem that a government may grant a special exemption from taxation, just as it may relieve individuals from other public burdens, such as a jury or military service, or may give bounties, ensure exclusive privileges as of copy or patent rights, or road, ferry, bridge or banking franchises, or depute the exercise of the right of eminent domain, or confer other special immunities. But as the government is a trustee of its powers for the use and benefit of the State or political community, the only legitimate ground upon which it may grant such special distinctions is, that thereby is secured some benefit or advantage to the public, which is supposed to be an adequate return for the concession. In every instance where there is accorded to an association of persons the limited liability and other advantages of a charter of incorporation, it is, in theory at least, for the accomplishment of some enterprise important to the public, which individuals separately are not able to undertake, or for the prosecution of which they will not venture their, whole estates under a general liability; and such also is or ought to be the consideration for every special privilege or immunity conferred in the charter. Thus in the present cases, because the construction and conduct of the railroad proposed under each of these charters was regarded as a public benefit, (and who can doubt that it has proved so ?) the franchises of incorporation and of making and exclusively using for gain a highway of travel and transportation, and to this end of condemning and appropriating the lands of individuals or the use thereof, &c., &c., were conferred as inducements to persons, who could spare the means, to embark them in *191 the enterprise, and as a farther inducement, was added this, that the portion of their estate which they should so venture, the money they would contribute to the necessary capital, the “stock” they would take, .should, in consideration of this benefit to the public, for the period named be relieved from the liability to taxation to which their other property or this same money otherwise invested, might be subject according to the changing exigencies of the government. The necessity both of the privilege and the immunity to the success of the enterprise was enhanced-by its magnitude, and the merely experimental nature of the venture invited the uncertainty of individual remuneration. To compensate for and as far as possible diminish this uncertainty, the expenses attending the proposed employment of their capital were to be reduced by discharging it, while thus employed from the general burden of contributing to the public charges. To tax this “gross income ” of that employment of their capital, to which it was the very object of tendering these privileges to invite them, would be little else than to turn the tempting fruit into “ apples of Sodom,” in their grasp to convert what had worn the semblance of a substantial benefit long enough to accomplish the purpose of its exhibition, into a mere illusion. For the “gross income” is necessarily all that is received from the investment or employment of capital, without any deduction of the outgoing expenses attending its earning and gathering; and the existence of such income is entirely consistent not only with an unprofitable, but a positively losing business, inasmuch as the whole income might not suffice for defraying the cost of conducting the enterprise.
To admit an intention to retain such a power to impose a tax, under a new form and a new name, upon the employment of the capital stock while expressly exempting that “ stock ” itself from taxation, a power not only to de *192 prive such employment of profit, bat to inflict apon it a loss, would be to impute bad faith of which the General Assembly cannot be supposed capable.
It is the judgment of this Court, that each of the relators, The South Carolina Eailroad Company, The Greenville and Columbia Railroad Company, and The Northeastern Eailroad Company, is “ exempted by law,” by the proper construction of the terms of its charter, from taxation upon its “gross income,” and is consequently excepted from the operation of that clause of the “Act to raise supplies, &c., of December 21st, 1866,” in which is imposed a tax of one dollar on every hundred dollars of “the gross income of all railroads (not exempt by law.)” The motion to reverse the order in the Court below for a prohibition made here in each of these cases is refused, and the appeals are dismissed.
DuNKIN, C. J., and Wardlaw, A. J., concurred.
Motion refused.