678 S.E.2d 422

**Raymond BOVAIN, Jr., as Personal Representative of the Estate of Willor Dean Bovain, Appellant,**

**v.**

**CANAL INSURANCE, Roy R. Greene d/b/a Rusty Greene Tree Service, and John R. Frazier, Inc., Defendants,**

**Of Whom Canal Insurance is the Respondent.**

No. 26664.

Supreme Court of South Carolina.

Heard March 5, 2009.

Decided June 8, 2009.

Rehearing Denied July 9, 2009.

---

10. S.C. Const. art. I, § 8.

Carl B. Grant, of Orangeburg; and Richard A. Harpootlian and Graham L. Newman, both of Columbia, for Appellant.

Brian Dumas, of Peake Fowler & Associates, of Columbia, and Robert D. Moseley, Jr., of Smith, Moore, Leatherwood, of Greenville, for Respondent.

Justice BEATTY:

Raymond Bovain, Jr. brought this declaratory judgment action as the Personal Representative of the Estate of Willor Dean Bovain, his late wife, after she died in a collision with a logging truck that was insured by Canal Insurance. Bovain asserted the truck driver was a "motor carrier" and sought reformation of the insurance policy to increase its limit of coverage to $750,000 pursuant to 23A S.C.Code Ann. Regs. 38–414 (Supp.2008) (requiring heightened insurance coverage for "motor carriers"). Canal Insurance opposed the request and sought a declaration that the $40,000 of combined limits coverage carried on the truck was sufficient under South Carolina law. Both parties moved for summary judgment.[1] The circuit court granted summary judgment to Canal Insurance, finding the truck driver was not a "motor carrier" under state law and was not subject to the insurance requirement of Regulation 38–414. Bovain appeals. We reverse and remand for entry of summary judgment in favor of Bovain.

## FACTS

On September 9, 2004, Bovain's wife died after she collided with a logging truck driven by Roy R. Greene. Greene was pulling onto Interstate 26 from the side of the road when Bovain's wife struck him from behind. Her car burst into flames and she died at the scene.

Greene, who does business as Rusty Greene Tree Service, is in the business of hauling cut trees to various pulpwood and

---

1. The remaining defendants are not parties to this appeal, so all references are solely to Canal Insurance.

paper companies. At the time of the accident, Greene was picking up logs from a worksite beside Interstate 26 and planned to take them to a paper mill in Eastover, South Carolina. Greene had insurance coverage on the logging truck with Canal Insurance in a combined single liability limit of $40,000. The truck was a ten-wheeler weighing approximately 26,000 pounds that Greene had purchased used. It had an attachment on the front for moving logs.

On November 4, 2005, Bovain filed this declaratory judgment action against Canal Insurance asserting Greene was a "motor carrier" and seeking to reform the insurance policy to increase the coverage to $750,000 pursuant to 23A S.C.Code Ann. Regs. 38–414. Under Regulation 38–414, which is applicable to "motor carriers," trucks weighing 10,000 or more pounds (GVWR)[2] that carry non-hazardous material must be insured under a policy carrying at least $750,000 of coverage. Bovain argued Greene was a motor carrier and thus was subject to the increased level of coverage required by Regulation 38–414.

Canal Insurance asserted Greene transported his own property and thus was not a motor carrier. Canal Insurance further argued that, even if Greene was a motor carrier, he was exempt from Regulation 38–414 because he was using his truck to haul cut trees. *See* S.C.Code Ann. Regs. 38–407(4) (Supp.2008) (providing an exemption for "[l]umber haulers engaged in transporting lumber and logs from the forest to the shipping points in this State").

The circuit court granted summary judgment to Canal Insurance. Bovain appeals, alleging the circuit court erred (1) in ruling the insurance policy at issue cannot be reformed to increase the limit of coverage to $750,000 pursuant to 23A S.C.Code Ann. Regs. 38–414, (2) in finding Greene was not a "motor carrier" within the purview of Regulation 38–414, and (3) in finding that, even if Greene qualified as a "motor carrier," he fell within the "lumber hauler" exception contained in 23A S.C.Code Ann. Regs. 38–407(4) and thus was exempt from Regulation 38–414's coverage requirement.

---

**2.** "GVWR" stands for Gross Vehicle Weight Rating, i.e., the maximum total weight of a vehicle and its cargo.

## LAW/ANALYSIS

Rule 56(c) of the South Carolina Rules of Civil Procedure provides that a trial court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP.

"In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 378–79, 378, 534 S.E.2d 688, 692 (2000). An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under Rule 56(c), SCRCP. *Id.* at 379, 534 S.E.2d at 692.

### (A) Insurance for Motor Carriers Under Regulation 38–414

Bovain first asserts the circuit court erred in finding Greene was not a "motor carrier" subject to the increased minimum insurance requirements of Regulation 38–414. We agree.

South Carolina law contains both statutes and regulations governing "motor carriers." At issue in this case is Regulation 38–414, which provides for heightened insurance requirements for certain "motor carriers" for hire as part of a group of Economic Regulations.

Specifically, Regulation 38–414 provides that "[i]nsurance policies and surety bonds for bodily injury and property damage will have limits of liability not less than" $750,000 per incident for trucks weighing 10,0000 or more pounds GVWR that carry non-hazardous freight. 23A S.C.Code Ann. Regs. 38–414 (Supp.2008). This regulation applies "to any person . . . or corporation which is . . . engaged as a motor carrier for hire within the State of South Carolina" unless they are otherwise exempted. 23A S.C.Code Ann. Regs. 38–401 (Supp. 2008).

A "carrier," in the legal sense, refers to one who undertakes to transport persons or property from place to

place. *Huckabee Transp. Corp. v. W. Assurance Co.,* 238 S.C. 565, 121 S.E.2d 105 (1961); *Windham v. Pace,* 192 S.C. 271, 6 S.E.2d 270 (1939). The term "motor carrier" includes "both a common carrier by motor vehicle and a contract carrier by motor vehicle." 23A S.C.Code Ann. Regs. 38–402(8) (Supp. 2008).

Statutory law also controls motor carriers. Section 58–23–20 provides: "No corporation or person . . . may operate a motor vehicle for the transportation of persons or property *for compensation* on an improved public highway in this State" without complying with the applicable statutory provisions and the regulations and authority of the Public Service Commission. S.C.Code Ann. § 58–23–20 (Supp.2008) (emphasis added).

"The term 'motor vehicle carrier' [as used in the portion of the Code concerning the regulation of motor vehicles for compensation] means every corporation or person . . . owning, controlling, operating or managing any motor propelled vehicle . . . used in the business of transporting persons or property *for compensation* over any improved public highway in this State[.]" S.C.Code Ann. § 58–23–10(4) (1977) (emphasis added).

The phrase "for compensation" as used in section 58–23–20 "means a return in money or property for transportation of persons or property by motor vehicle over public highways, whether paid, received or realized, and shall specifically include any profit realized on the delivered price of cargo where title or ownership is temporarily vested during transit in the carrier as a subterfuge for the purpose of avoiding regulation under this chapter." S.C.Code Ann. § 58–23–30 (1977).

In the case before us, the circuit court found Greene was a private carrier, not a motor carrier, so he was not subject to the insurance requirements in Regulation 38–414. The circuit court found "Greene is not a motor carrier for hire because he does not transport the property of others for compensation." The circuit court stated: "Greene cuts trees, picks up trees that have been cut and abandoned to him by other tree services, and hauls and sells those trees to pulpwood and paper companies. When he sells the trees, he receives their market value, not a fee for handling them as cargo. Greene is

transporting and selling his own property and is not subject to regulation as a motor carrier for hire."

The circuit court stated because Greene is a private carrier, "he is not required to carry a certificate of authority issued by the Public Service Commission (PSC).... Instead, as a private carrier, Greene is governed by the general South Carolina Financial Responsibility Act, which, at the time of the collision, only required him to maintain minimum liability limits of $15,000/$30,000/$10,000 or, in this case, combined single limits of $40,000," citing S.C.Code Ann. § 38–77–140. The circuit court concluded that reformation of the policy issued by Canal Insurance to provide the minimum coverage for a motor carrier of $750,000 was not appropriate as "Greene complied with the law as it applies to private carriers."

On appeal, Bovain contends the circuit court erred in finding that Greene is not a motor carrier subject to the increased limits of coverage in Regulation 38–414. Bovain asserts the temporary transfer of ownership of the logs to Greene may not be used to avoid application of the limits of coverage in Regulation 38–414.

Canal Insurance, in contrast, maintains Greene is not compensated for transporting the wood; rather, Greene owns the trees and takes them to the mills of his choice. Canal Insurance asserts "[t]he fact that Greene is paid by a timber broker [John Frazier] for providing logs to various mills and pulpwood producers does not contradict the fact that he is selling the wood as his own property...."

During his deposition testimony, Greene testified that, on the date of the accident with Bovain's wife, he had responded to a call from a tree cutting service that was removing trees under a contract with the highway department near Interstate 26. Greene testified that he was asked to pick up the wood, which he was told "was on I–26 in between the Lexington hospital and no. 1 exit going toward Charleston." Greene had loaded his truck with cut wood on the side of Interstate 26 and then was pulling onto Interstate 26 to take it to a mill in Eastover when the collision occurred.

Greene stated he had worked with John Frazier for approximately ten years. Greene testified that he picks up wood at various locations for himself, but stated, "I just sell it through

Frazier. That's how I get rid of it." Greene does not charge anything for picking up the wood because he plans to sell it. Greene conceded that when he took the lumber to the mills, he would not be paid at that time. Instead, Frazier would pay him based on the amount of wood procured. Greene acknowledged that Frazier "tells me where I can go with it." Greene stated he did not talk directly to the mills, but did so only "[t]hrough Frazier."

Greene stated he was under Frazier's workers' compensation coverage. In addition, Frazier loaned him money to purchase his logging trucks, including the one that was involved in this accident. Greene stated he purchased the insurance policy with a combined single limit of $40,000 as that was the absolute minimum level he could acquire based on the truck's weight.[3]

John Frazier, a self-identified broker and timber dealer, testified in his deposition that Greene would take the wood to the mill, which would then issue a ticket, and Greene would bring the ticket to him. Frazier would then take out a percentage of the amount for "handling" and give Greene the remainder.

Frazier acknowledged that when Greene brought logs to a mill, the sale price would be credited to his [Frazier's] account, and Greene would bring him the ticket. Frazier stated he has contracts with the paper companies and they pay him, not Greene. Frazier frequently gave "advances" to Greene, and usually kept about ten to twenty percent of the proceeds for being the "middle man" and then gave Greene the remainder. Frazier stated he usually paid Greene and others, including loggers (those he subcontracted with to cut the wood) and vendors, every Friday. Frazier stated Greene procured virtually all of the wood on his own. When asked why Greene did not just sell the wood himself, i.e., why did he need him [Frazier], Frazier conceded: "He doesn't." However, Frazier explained that the mills like to work with people they know, and he had a reputable company with sixty years of experience in the business so they liked doing business with him.

---

3. In his affidavit, Greene stated he explained the nature of his business to his insurance agent and requested the minimum liability limits allowed by law.

We find the evidence in the record indicates that Greene sold the logs in the name of John Frazier for at least ten years, that the mills paid John Frazier, not Greene, and that Frazier directed him as to which mills to sell to. Under these circumstances, Frazier is the true seller, and Greene is merely transporting the logs for the convenience of Frazier.

The fact that Greene temporarily held title to the logs does not preclude the finding that he was being paid to transport materials. *See* S.C.Code Ann. § 58–23–30 (1977) (The phrase "for compensation" as used in section 58–23–20 "means a return in money or property for transportation of persons or property by motor vehicle over public highways, whether paid, received or realized, and shall specifically include any profit realized on the delivered price of cargo where title or ownership is temporarily vested during transit in the carrier as a subterfuge for the purpose of avoiding regulation under this chapter.").

Since Greene knew when he was picking up the logs that he would promptly sell them in the name of John Frazier, Greene was merely holding title temporarily until he took the logs to the mill. Thus, we conclude Greene was transporting the wood for Frazier and hold that he qualifies as a motor carrier under South Carolina law. *See* 13 Am.Jur.2d *Carriers* § 5 (2000) ("The nature of a carrier is determined by its method of operation. Thus, it has been said that a carrier's status is determined by what it does rather than by what it says it does." (footnote omitted)).

### (B) Exemption for Lumber Haulers in Regulation 38–407(4)

Bovain next argues the circuit court erred in determining that, "[e]ven assuming ... Greene is a 'motor vehicle carrier' for hire, Greene would be exempt from the insurance requirements in Title 58 and under the regulations because he is a lumber hauler." [R 7] Bovain asserts Canal Insurance failed to establish that the lumber hauler exemption was applicable here. We agree.

Regulation 38–407 provides for exemptions from the Economic Regulations for certain motor carriers. In particular, Regulation 38–407(4) provides an exemption for qualifying

"[l]umber haulers engaged in transporting lumber and logs *from the forest* to the shipping points in this State." 23A S.C.Code Ann. Regs. 38–407(4) (Supp.2008) (emphasis added). The phrase "from the forest" is not defined in the regulation.

Bovain argued the exemption did not apply because Greene was not transporting logs "from the forest," but was, instead, picking up logs left by a tree cutting operation that was working in an area along Interstate 26. The circuit court found Bovain was "reading the exemption in an overly-restrictive manner" and that "[t]his exemption is a 'farm to market' exemption and applies when an individual hauls an agricultural product from the point of production to the point of sale."

On appeal, Bovain contends the circuit court interpreted this exemption in a manner that is inconsistent with the plain language of the regulation. Bovain asserts Greene was not a hauler engaged in transporting logs "from the forest," and carriers such as Greene who regularly utilize the State's highways to carry on their business are not entitled to the protection of the "farm-to-market" exemption, which was intended to exempt the infrequent transportation of agricultural products to the market, not the almost daily transportation of items for profit as done by Greene.

■ The burden of proving the entitlement to an exemption is on the party asserting the exemption. *See Ga. Cas. & Sur. Co. v. Jernigan,* 166 Ga.App. 872, 305 S.E.2d 611, 614 (1983) (finding a truck owner and its insurer failed to meet their burden of showing a pulpwood truck came within the terms of an exemption from the general statutory definition of "motor contract carrier" where they did not prove the truck was engaged exclusively in the transportation of agricultural products from the forest to the mill or other place of manufacture). In this case, the burden was on Canal Insurance to prove the exemption was applicable, and there was no burden on Bovain in this regard. *See id.* (stating there is no burden on the opposing party).

■ In general, exemptions are an act of legislative grace and, as such, they are to be strictly and reasonably construed. *See State v. Life Ins. Co.,* 254 S.C. 286, 293–94, 175 S.E.2d 203, 206–07 (1970) (noting exemptions are provided as an act of legislative grace and are to be construed strictly; a party

must meet the specified conditions to obtain the benefit conferred by the exemption); *see also Village of Lannon v. Wood–Land Contractors, Inc.,* 267 Wis.2d 158, 672 N.W.2d 275, 278 (2003) (applying a "strict but reasonable construction" in interpreting the application of a personal property tax exemption specifically established for logging equipment).

■  The words used in legislation "must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand [their] operation." *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992); *see Owen Indus. Prods., Inc. v. Sharpe,* 274 S.C. 193, 195, 262 S.E.2d 33, 34 (1980) (stating the general rule that a statutory exemption "must be given its plain, ordinary meaning and must be construed strictly against the claimed exemption"); *State v. Hood,* 49 S.C.L. (15 Rich.) 177, 185 (1868) ("Every exemption must be couched in such plain and unambiguous language as to satisfy the Court beyond doubt that the Legislature intended to create the exemption.  Such a right can never arise by mere implication, and all laws granting the exemption are to be most strictly construed." (citation omitted)).

As noted by one treatise, "forest" is synonymous with "woods," and in its commonly understood sense, refers to an extensive area of land covered by trees:

> The term "wood" is often used in the plural, with the same force as in the singular, as indicating a large and thick collection of trees.  It is synonymous with "forest," and has been so defined, although the latter term is sometimes said to imply a wood of considerable extent.  Both terms are broad enough to include not only the trees but the land on which they stand.  When referring to land, the term "woods" means forest lands in their natural state, as distinguished from lands cleared and enclosed for cultivation, and "forest" means a tract of land covered with trees, or a tract of woodland with or without enclosed intervals of open and uncultivated ground.

98 C.J.S. *Woods and Forests* § 1 (2002) (footnotes omitted).

The Supreme Court of Illinois has also found that "[a] forest is defined as a tract of land covered with trees; a wood, usually of considerable extent." *Forest Preserve Dist. v.*

*Jirsa,* 336 Ill. 624, 168 N.E. 690, 691 (1929) (alteration in original); *see also People v. Long Island R.R. Co.,* 126 A.D. 477, 110 N.Y.S. 512, 512 (1908) (stating "[a] forest is defined as being 'a tract of land covered with trees; a wood, usually one of considerable extent; a tract of woodland with or without [e]nclosed intervals of open and uncultivated ground'" (citation omitted)).

We find the definitions above persuasive, and believe that the plain meaning of "forest" is that it commonly refers to an area of land covered with trees, usually of considerable extent. The express language of Regulation 38–407(4) exempts those hauling lumber from a *forest* as the point of production. We see no reason to deviate from the plain language of the regulation.

Canal Insurance submitted an affidavit from David Findlay, the Administrator of the Motor Carrier Services Division (MCS) of the South Carolina Department of Motor Vehicles, who stated that "MCS *interprets this regulation broadly* as applying to persons like Greene who haul cut trees to lumber processors. These exemptions are generally referred to as farm-to-market exemptions." (Emphasis added.) Similarly, Findlay stated that MCS interprets a statute governing the transporting of "forest products from the farm to the first market" to be applicable "to lumber haulers that haul cut trees to sell to pulpwood processors *regardless of whether the trees are actually obtained from a 'forest.'"* (Emphasis added.)

MCS applies the wrong standard of construction as exemptions are to be construed narrowly, not broadly. Further, MCS is not responsible for overseeing the Economic Regulations. Consequently, its interpretation is not determinative.

██ Because Regulation 38–407 is meant to be a farm-to-market exception, it should apply to areas of usual harvesting, not just small areas where trees can be cut. *See generally* 17 Words and Phrases *Forestation* 43 (Supp.2008) (citing *Cascade Floral Prods., Inc. v. Dep't of Labor & Indus.,* 142 Wash.App. 613, 177 P.3d 124 (2008), which found that Washington's farm labor contractor act did not apply to the brush picking industry as it was not "forestation" within the meaning

of the act because the statutory definition of "forestation" required cultivation or commercial planting).

A broad interpretation of "forest" as pertaining to any site where trees are cut would eviscerate the language that the exemption applies to those hauling logs "from the forest to the shipping points in this State." We do not believe that is a reasonable and strict construction of all of the pertinent terms of the exemption. The legislature could have easily used broader language and stated that anyone hauling lumber or logs is exempted if that were its intent. *Cf. State v. Alls*, 330 S.C. 528, 531, 500 S.E.2d 781, 782 (1998) (stating legislative provisions must be read as a whole and sections which are part of the same law should be construed together and each given effect, if it can be done by any reasonable construction). In this case, we conclude Canal Insurance did not meet its burden of establishing that the exemption applied here as there was no evidence that Greene was transporting lumber and logs "from the forest to the shipping points in this State."

■ Having found Greene qualified as a motor carrier, and that he did not meet the requirements for exemption as a lumber hauler, we hold the policy issued by Canal Insurance should be reformed because it does not conform to the legal requirements for coverage as mandated by Regulation 38–414. *See Hamrick v. State Farm Mut. Auto. Ins. Co.*, 270 S.C. 176, 179, 241 S.E.2d 548, 549 (1978) ("A policy of insurance issued pursuant to statutory law must at a minimum give the protection therein described. It may give more protection but not less, and a policy issued pursuant to the law which gives less protection will be interpreted by the court as supplying the protection which the legislature intended."); *Jordan v. Aetna Cas. & Sur. Co.*, 264 S.C. 294, 297, 214 S.E.2d 818, 820 (1975) (stating while parties are generally permitted to contract as they desire, this freedom is not absolute and insurance coverage required by law may not be omitted because statutory provisions relating to an insurance contract are part of the contract).

Although Canal Insurance argues that reformation is appropriate only for automobile insurance policies issued under the South Carolina Financial Responsibility Act, we find no reason to impose this arbitrary distinction.

Regulation 38–414 provides: "Insurance policies and surety bonds for bodily injury and property damage **will** have limits of liability *not less than*" $750,000 per incident for trucks weighing 10,0000 or more pounds GVWR that carry non-hazardous freight. S.C.Code Ann. Regs. 38–414 (emphasis added). The South Carolina Legislature has mandated a level of coverage for larger vehicles in order to protect the public from the increased dangers inherent with their operation on our state's highways. It would be unreasonable to interpret the language of Regulation 38–414 differently from the mandated coverage under the Financial Responsibility Act, as the potential for catastrophic damage is much greater with these larger vehicles. We find insurance carriers have a duty to issue policies in accordance with the mandated minimum levels of coverage and that reformation of the Canal Insurance policy to provide the mandated minimum level of coverage is appropriate.

## CONCLUSION

Based on the foregoing, we hold Greene is a motor carrier as defined in the South Carolina Code and that the exemption from the Economic Regulations for lumber haulers is not applicable here. We find insurers have a duty to issue insurance in accordance with the mandate of Regulation 38–414 and conclude Bovain is entitled to reformation of the Canal Insurance policy to conform to the $750,000 minimum level of coverage required by Regulation 38–414. Accordingly, we reverse and remand for entry of summary judgment in favor of Bovain.

**REVERSED AND REMANDED.**

TOAL, C.J., WALLER, J. and Acting Justice JAMES E. MOORE, concur.

KITTREDGE, J., concurring in part, dissenting in part in a separate opinion.

Justice KITTREDGE, concurring in part, dissenting in part:

I concur with the majority's holding that Roy R. Greene was, as a matter of law, a motor carrier under South Carolina

law on the accident date of September 9, 2004. I respectfully dissent, however, from the legal determination that Greene may not avail himself of the exemption contained in Regulation 38–407(4). 23A S.C.Code Ann. Regs. 38–407(4) (Supp. 2008) (providing an exemption for "[l]umber haulers engaged in transporting lumber and logs from the forest to the shipping points in this State"). I do not believe the applicability or inapplicability of the exemption may be determined on the current record to the exacting summary judgment standard. I would reverse the grant of summary judgment in favor of Greene and remand to the trial court for further consideration of the claimed exemption.