777 S.E.2d 425

John SIFONIOS, individually and as agent for William
Rempfer and Gary Sedlack, Appellant,

v.

TOWN OF SURFSIDE BEACH, Respondent.

Appellate Case No. 2013–001960.

No. 5354.

Court of Appeals of South Carolina.

Heard Nov. 3, 2014.

Decided Sept. 23, 2015.

Robert H. Gwin, III, of Gwin Law Offices, LLC, of Myrtle Beach, for appellant.

Michael Warner Battle, of Battle Law Firm, LLC, of Conway, for respondent.

McDONALD, J.

John Sifonios appeals the circuit court's grant of summary judgment in favor of the Town of Surfside Beach (the Town) as to the validity of a lease agreement. Although the Town never signed or delivered the lease agreement, Sifonios asserts that sufficient signatory and delivery acts occurred when the Surfside Beach Town Council (Town Council) approved the proposed form of the lease and posted the minutes recording this approval on its website. We affirm.

**FACTS AND PROCEDURAL HISTORY**

The Town sought proposals from prospective tenants to operate and maintain a restaurant on the Surfside Beach pier off Ocean Boulevard. On or about February 14, 2011, Sifonios, together with William Rempfer and Gary Sedlack, submitted a letter of intent (Letter of Intent) to the Town. James Cole, an associate broker with Century 21 Strand Group, signed the Letter of Intent on behalf of an undisclosed principal. The Letter of Intent proposed the formation of a corporation to operate a restaurant on the Surfside Beach pier once there was a "meeting of the minds" as to the lease terms.[1] At a special council meeting on March 4, 2011, Town Council accepted the terms of the Letter of Intent and authorized the Town Administrator, Jim Duckett, to present a proposed lease agreement (Lease Agreement) for Town Council approval. On April 15, 2011, Duckett presented the Lease Agreement to Town Council. The Lease Agreement contained the following requirements:

20.8 *No Option*

---

1. The Letter of Intent sets forth the following:

 The Lessee is comprised of individuals residing in the Town of Surfside Beach, South Carolina, with credit scores of 750+ and a minimum of $100,000 Dollars of operation capital with bank references. At such time upon a meeting of the minds, the individuals plan to form a corporation for the operation of a restaurant at the space. Although the individuals did not wish their identities to be made public at this moment, they will, at the Owner's request, pending an execution of an agreement of confidentiality.

The submission of this Lease for examination does not constitute a reservation of or option for the Premises, and this Lease shall become effective only upon execution and delivery hereof by both parties.

20.9 *No Modification*

This Lease can be modified only by a writing signed by the party against whom the modification is enforceable.

At the April 15, 2011 special meeting, Town Council authorized Duckett to enter into the Lease Agreement with Sifonios, conditioned upon the Town's receipt and acceptance of (1) proof of the prospective Tenant's creditworthiness, and (2) a satisfactory background check. Town Council subsequently signed and posted the special meeting minutes to the Town website.

Upon receiving Sifonios's financial data and the results of the background checks, Duckett told Sifonios that everything "looked good." Duckett informed Sifonios that he "had everything he needed" and would be in touch. However, Duckett neither physically signed the Lease Agreement nor delivered it to Sifonios. At a regular council meeting on May 10, 2011, the Town rescinded its conditional approval of the Lease Agreement.

On June 30, 2011, Sifonios filed suit seeking (1) a declaratory judgment as to the validity of the Lease Agreement and (2) damages in the form of lost profits resulting from the Town's alleged failure to execute and perform the Lease Agreement.[2] The Town moved for summary judgment on February 15, 2013. On May 15, 2013, the circuit court heard and subsequently granted the Town's motion. On July 25, 2013, Appellant filed a Rule 59, SCRCP, motion to alter or amend, seeking express rulings as to (1) whether the signing of the minutes by the members of Town Council constituted a sufficient signing of the Lease Agreement; and (2) whether the posting of the minutes on the Town's website constituted delivery of the Lease Agreement. The circuit court denied Sifonios's motion on August 12, 2013.

---

**2.** Sifonios never occupied the premises and never paid the Town rent or a security deposit. He claims as damages only the potential future lost profits for the new business he planned to establish on the pier.

## STANDARD OF REVIEW

"An appellate court reviews the granting of summary judgment under the same standard applied by the [circuit] court under Rule 56(c), SCRCP." *Bovain v. Canal Ins.*, 383 S.C. 100, 105, 678 S.E.2d 422, 424 (2009) (citing *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000)). The circuit court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Hancock v. Mid–South Mgmt. Co., Inc.*, 381 S.C. 326, 329–30, 673 S.E.2d 801, 802 (2009) (citing *Koester v. Carolina Rental Ctr.*, 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994)).

## LAW/ANALYSIS

### I. Signing

██ Sifonios argues the Lease Agreement that he signed and which Town Council approved at the April 15, 2011 special council meeting—when considered in conjunction with the signed meeting minutes—constituted a sufficient signing for purposes of section 20.8 of the Lease Agreement. We disagree.

██ "Lease provisions are construed under rules of contract interpretation. One cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties. To determine the intention of the parties, the court must first look at the language of the contract." *S.C. Dep't of Transp. v. M & T Enter. of Mt. Pleasant, LLC*, 379 S.C. 645, 654–655, 667 S.E.2d 7, 12–13 (Ct.App.2008) (citations omitted). Whether the language of a contract is ambiguous is a question of law for the court. *Id.* at 655, 667 S.E.2d at 13. "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary, and popular sense." *Id.* (citing *C.A.N. Enters., Inc. v. S.C. Health &*

*Human Servs. Fin. Comm'n*, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988)).

## A. Lease Agreement

As stated above, section 20.8 of the Lease Agreement states, "The submission of this Lease for examination does not constitute a reservation of or option for the Premises, and *this Lease shall become effective only upon execution and delivery hereof by both parties.*" (emphasis added). Additionally, section 20.9 of the Lease Agreement reads, "This Lease can be modified only by a *writing signed by the party against whom the modification is enforceable.*" (emphasis added).

■ We find the plain language of the Lease Agreement states "this Lease shall become effective only upon execution and delivery hereof by both parties." When the parties know that the execution and delivery of a written contract is a condition precedent to their being bound by that contract, the contract is simply not binding until the written agreement is executed and delivered, even if all of the terms have been agreed upon. *See, e.g., Oeland v. Kimbrell's Furniture Co.*, 210 S.C. 223, 227, 42 S.E.2d 228, 228–29 (1947) ("It is a well-founded rule of law that a contract for sale or lease of real estate may be consummated by letters without the execution of a formal instrument and the fact that it is understood that the contract is to be reduced to a formal instrument does not invalidate such agreement *unless there be a positive agreement that it shall not be binding until formally executed.*" (emphasis added)); *see also* 17A Am. Jur. 2d *Contracts* § 175 (2014).

In the face of such express language, multiple letters or documents cannot become a substitute for the lease itself. *See Dean v. Dean*, 229 S.C. 430, 436, 93 S.E.2d 206, 209 (1956). Because section 20.8 of the Lease Agreement expressly provides it is not binding unless signed by all parties, we conclude Sifonios's signing was not sufficient to create a binding contract. *See id.* ("The question as to whether those who have signed are bound is generally to be determined by the intention and understanding of the parties at the time of the execution of the instrument. The reason for holding the instrument void is that it was intended that all the parties

should execute it and that each executes it on the implied condition that it is to be executed by the others, and, therefore, that until executed by all, it is inchoate and incomplete and never takes effect as a valid contract, and this is especially true where the agreement expressly provides, or its manifest intent is, that it is not to be binding until signed." (citation omitted)).

## B. Town Council's Special Meeting Minutes

Additionally, Sifonios argues the Town Council's signing of the meeting minutes was an effective execution of the Lease Agreement, thus satisfying the execution requirement found in section 20.8 of the Lease. We believe this argument misses an express term of the agreement, namely that the lease could not be enforceable against the Town unless the Town actually signed it.

Even if the Town was not required to sign the Lease Agreement to make it effective, language in the minutes signed by Town Council defeats Sifonios's contention. The April 15, 2011 minutes reflect that:

> Mr. Smith made a motion to authorize the Administrator to enter into the lease agreement tended [sic] to the Town by Mr. John Sifonios contingent upon the Town's receipt and acceptance of evidence of one, the prospective tenants['] credit worthiness, and two, satisfactory background check.
>
> . . . .
>
> Mr. Samples: "Pending the successful background checks which are described in the motion[,] I presume that we will reconvene or at least be apprised of the outcomes of that credit check and criminal background checks so that we are assured that the prospective tenant is somebody who would be a good ambassador for the Town of Surfside Beach."
> Mr. Johnson: "I agree with Mr. Samples and I would like to ask our Town Administrator to at least keep Council apprised of the results of those inquiries, please."

(emphasis omitted). As illustrated above, Sifonios's argument that the Town intended that the minutes serve as a substitute for the execution of the Lease Agreement is contradicted by the contents of the minutes. The minutes unequivocally set forth the Town's intent to "reconvene or at least be apprised"

after satisfactory background and credit checks were obtained. Therefore, we find no error in the circuit court's holding that Town Council's execution of the minutes was not a substitute for a valid execution of the Lease Agreement.

## II. Delivery

 Sifonios claims the Town satisfied the delivery requirement outlined in section 20.8 of the Lease Agreement when Town Council posted the minutes on the Town's website. We disagree.

> Delivery is a prerequisite to the validity of a written lease, but manual delivery is not necessary. No particular form of words or action is necessary to constitute delivery of a lease, so long as there are acts or words or both which clearly manifest that it is the intent of the parties that an interest in land is being conveyed to the lessee. The mere signing of the instrument by the parties not in the presence of each other, without more, does not evince such intent.

49 Am. Jur. 2d *Landlord and Tenant* § 30 (2006) (footnotes omitted). Hence, "[t]he controlling question of delivery in all cases is one of intention." *Donnan v. Mariner*, 339 S.C. 621, 626, 529 S.E.2d 754, 757 (Ct.App.2000) (citation omitted); *see also First Union Nat'l Bank of S.C. v. Shealy*, 325 S.C. 351, 355, 479 S.E.2d 846, 848 (Ct.App.1996).

We find Sifonios's claim that the Town intended to deliver the Lease Agreement when it posted the meeting minutes to be without merit for two reasons. First, this argument ignores the conditions precedent to delivery, which the record reflects were explicitly stated several times in the Town Council's meeting minutes. Sifonios argues that the Town Administrator's remarks regarding his individual acceptance of the financial data and background information constituted a valid delivery of the Lease Agreement. However, the minutes from Town Council's special meeting evidence a clear intent to reconvene or, at a minimum, receive the results of the background and credit checks before it would authorize the Town Administrator to enter into the Lease Agreement.

Moreover, the record reveals that once Town Council members were informed of these results, Town Council rescinded its conditional approval of the Lease Agreement and revoked the Town Administrator's authority to execute and deliver the Lease Agreement.

Second, Appellant's own failure to act in accordance with the Lease Agreement's terms confirms that neither party interpreted the posting of the minutes to constitute valid delivery. Article II, section 2.2 of the Lease Agreement states, "Tenant shall pay to Landlord upon the delivery of this Lease the sum certain amount equivalent to one month's rent for the leased Premises (the 'Security Deposit') as security for the full and faithful performance by Tenant of each and every term, provision, covenant and condition of this Lease...." Hence, upon the delivery of the Lease Agreement, Sifonios was to pay the Town a security deposit in the amount of $4,166.66.[3] Sifonios offered no evidence to the circuit court that he ever tendered this security deposit after the special meeting minutes were posted to the Town's website.

## CONCLUSION

The circuit court properly granted the Town's motion for summary judgment. Accordingly, the circuit court's ruling is

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.

---

3. Article I, section 1.1(i) of the Lease Agreement provides the "Annual Basic Rental" shall be $50,000, payable in twelve monthly installments. Thus, under the terms of the Lease Agreement, upon the delivery of the Lease, Appellant was to pay the Town one month's rent, $4,166.66.