# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

South Carolina CVS Pharmacy, LLC, Appellant,

v.

KPP Hilton Head, LLC, Respondent.

Appellate Case No. 2020-001446

---

Appeal From Beaufort County
Marvin H. Dukes, III, Master-in-Equity

---

Opinion No. 6005
Heard June 6, 2023 – Filed July 26, 2023

---

**REVERSED**

---

Walter Hammond Cartin, Katon Edwards Dawson, Jr., and Jeffrey Evan Phillips, all of Parker Poe Adams & Bernstein, LLP, of Columbia, for Appellant.

Thomas A. Pendarvis, of Pendarvis Law Offices, PC, of Beaufort, and Philip Benjamin Zuckerman, of Berger Singerman LLP, of Fort Lauderdale, FL, both for Respondent.

---

**HEWITT, J.:** This case is about an option to renew a commercial lease. The master-in-equity found that the tenant—South Carolina CVS Pharmacy, LLC—did not comply with the lease's deadline for giving the landlord notice of intent to exercise the option. CVS argues this decision was error.

The key facts are not in dispute. The deadline fell on a Sunday. Written notice of CVS's intent to renew the lease was delivered to the local post office and available for the landlord to pick up on Saturday; the day before the deadline. The landlord did not retrieve the notice until the following week.

The case turns on the lease's language. For the reasons that follow, we agree with CVS and reverse.

**FACTS**

The lease is a twenty-year lease that ran from April 1999 to January 2020. It included four options to renew the lease for five years. The first parties to the lease have all moved on. The original landlord assigned its interest to KPP Hilton Head, LLC (KPP). The original tenant assigned its interest to CVS.

The lease required CVS to give notice that it would exercise the option no later than ninety days prior to the current term expiring. Here, it meant CVS had to provide notice by Sunday, November 3, 2019. The dispute in this case centers on the lease's "notice" clause. The text of the clause is block quoted below with a line break added between sentences for the reader's ease.

> [Notice] shall be given or served as follows: by mailing the same to the other party by registered or certified mail, return receipt requested, or by overnight courier service provided a receipt is required, at its Notice Address set forth in Part I hereof, or at such other address as either party may from time to time designate by notice given to the other.
>
> The date of receipt of the notice or demand shall be deemed the date of the service thereof (unless the notice or demand is not received or accepted in the ordinary course of business, in which case the date of mailing shall be deemed the date of service thereof).

The parties refer to the parenthetical section at the end as the "service upon mailing exception."

The parties do not dispute the basic facts. On October 30—the Wednesday before the deadline—CVS mailed written notice to the landlord via certified mail, return

receipt requested.  The landlord (KPP) has no office building and only receives mail at a P.O. Box.  The notice arrived at the post office on Saturday, November 2—the day before the deadline—and was available for pickup by 9:45 a.m. that morning. KPP did not check its mail until Wednesday, November 6; three days after the deadline.  KPP took the position that CVS's notice was untimely and refused to honor the option.  CVS then filed this action.

Both parties moved for summary judgment.  The master granted KPP's motion.  The master relied on *33 Flavors Stores of Virginia, Inc. v. Hoffman's Candies, Inc.*, 296 S.C. 37, 40, 370 S.E.2d 293, 295 (Ct. App. 1988), for the proposition that an option to renew a lease must be strictly construed against the party claiming the option.  The master further found the notice clause was unambiguous, that it specifically required a signed receipt, that the date the receipt was signed was the date of service, and that KPP did not receive the notice until it signed for the notice at the post office.  The master found the notice would still have been untimely even if KPP checked its mail the first business day after the notice arrived because Monday, November 4 was still after the November 3 deadline.  The master interpreted the "service upon mailing exception" as only covering situations when the intended recipient refused to accept notice or failed to abide by the normal method of receiving deliveries, which did not apply to these facts.

CVS filed a motion for reconsideration, which the master denied.  This appeal followed.

**ISSUE**

Did the master err in finding CVS did not timely exercise its option to renew the lease?

**STANDARD OF REVIEW**

"An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under Rule 56(c), SCRCP." *Bovain v. Canal Ins.*, 383 S.C. 100, 105, 678 S.E.2d 422, 424 (2009).  Here, there were cross-motions for summary judgment, so there is no dispute the case qualifies for resolution as a matter of law. *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011).

**ANALYSIS**

We begin with the lease's language, for those terms define the scope of the agreement. First, we note the lease's instruction that it should be construed according to its plain meaning and not for or against either party. Second, we note that the notice clause is not tied to the renewal option, but applies "[w]henever, pursuant to this Lease, notice or demand shall or may be given to either of the parties by the other."

There is no doubt that the notice clause requires a return receipt, but it is equally evident that the clause does not equate the date of service with the date that any return receipt is signed. The clause contains multiple disjunctives: it says notice shall be "given or served" and explains that the notice upon mailing exception applies when notice is not "received or accepted" in the ordinary course of business. Disjunctives suggest alternatives—the clause implies differences between notice being "given," notice being "served," notice being "received," and notice being "accepted." *See Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 407 S.C. 407, 417, 756 S.E.2d 148, 153 (2014) ("[A]n interpretation that gives meaning to all parts of the contract is preferable to one which renders provisions in the contract meaningless or superfluous." (quoting *Crown Laundry & Dry Cleaners, Inc. v. United States*, 29 Fed. Cl. 506, 515 (1993))). The clause does not define what constitutes receipt.

The Restatement explains:

> A written revocation, rejection, or acceptance is received when the writing comes into the possession of the person addressed, or of some person authorized by him to receive it for him, *or when it is deposited in some place which he has authorized as the place for this or similar communications to be deposited for him.*

Restatement (Second) of Contracts § 68 (Am. Law Inst. 1981) (emphasis added). A particular agreement might have language contrary to the general rule, but one way to approach this dispute would be to ask whether the lease's language suggests that constructive receipt (depositing notice in a mailbox or post office box, for example) would count as receiving notice. Given the disjunctives we outlined above, we believe it does. A rule limiting notice to actual receipt and hinging the time of receipt on the recipient's signature seems like it would be easy to write and would not be written the way this clause is written.

Though they are not binding, a few federal decisions are useful. These cases involve the requirement that a plaintiff in certain types of cases act within ninety days of

receiving a right to sue letter from the Equal Employment Opportunity Commission. Some circuits have adopted the view that rather than wrestle with whether receipt includes constructive receipt, the dispute should instead be resolved by applying common understandings of receipt to the facts of individual cases. *See Bell v. Eagle Motor Lines*, 693 F.2d 1086, 1087 (11th Cir. 1982) (explaining the court will approach the matter of determining when receipt occurred on a case by case basis). This approach has led courts to hold, for example, that a wife's receipt of a letter to her husband triggered the start of the period for her husband to sue, *id.*, and that receipt occurred when the postal service delivered a slip of paper notifying the plaintiff there was a letter at the post office for her to pick up, *Watts-Means v. Prince George's Fam. Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993). We think this case is cut from the same cloth as those. *See also Harvey v. City of New Bern Police Dep't*, 813 F.2d 652 (4th Cir. 1987) (similar to *Bell*).

One argument KPP has made throughout this litigation is that CVS had years to exercise its option and that CVS is simply paying the price for waiting to the last minute. KPP also argues that CVS knew or should have known to act earlier because the renewal notice for a different CVS store took eleven days for a return receipt to be executed, making it obviously unlikely that notice sent four days before the deadline would arrive in time.

We accept these points, but we do not see how they factor into deciding what it means to receive notice under the lease. CVS had a long time to consider renewing the lease, but that does not justify the master shortening the lease's deadline for giving notice to eighty-eight days from ninety (this was the practical effect of the master's ruling). Notice of CVS's intent to renew the lease arrived at its final destination and was available for pick up the day before the deadline. We reverse the decision that this did not constitute timely receipt of the notice.

**CONCLUSION**

For these reasons, the master's decision is

**REVERSED.**

**THOMAS and MCDONALD, JJ., concur.**